[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones,* Slip Opinion No. 2016-Ohio-5105.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5105

THE STATE OF OHIO, APPELLANT, *v.* JONES, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones,* Slip Opinion No. 2016-Ohio-5105.]**

*Sixth Amendment—Right to speedy trial—Preindictment delay—Court of appeals improperly applied two-step, burden-shifting analysis for determining whether delay constitutes due-process violation—Proven unavailability of specific evidence that would attack credibility or weight of state's evidence may satisfy due-process requirement of actual prejudice— Judgment affirming dismissal of charges reversed and remanded.*

(No. 2015-1427—Submitted April 20, 2016—Decided July 27, 2016.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 101258, 2015-Ohio-2853.

_____

**FRENCH, J.**

{¶ 1} This discretionary appeal by the state of Ohio asks this court to clarify the standard governing claims of prejudice based on preindictment delay.

The Cuyahoga County Court of Common Pleas dismissed charges of rape and kidnapping against appellee, Demetrius Jones, after determining that the state's indictment of Jones one day before the expiration of the applicable 20-year statute of limitations constituted unconstitutional preindictment delay. The Eighth District Court of Appeals affirmed that dismissal. Because the court of appeals used an improper standard in its analysis, however, we reverse and remand to that court for further review.

*Facts and procedural background*

{¶ 2} Early on September 2, 1993, S.W. reported to the Cleveland Police Department that Jones had raped her late the previous night. The responding officers completed an incident report and transported S.W. to St. Luke's Hospital, where a rape kit was administered.

{¶ 3} The incident report lists addresses for S.W., S.W's mother—who is listed as a witness—and Jones, and it also includes S.W.'s account of the alleged rape. S.W. stated that she was with Jones at his mother's apartment, where Jones also lived. She said that when she told Jones that she had to leave, he refused to let her go, locked her in his bedroom, threw her on the bed, threatened her with a knife, and told her she was not leaving until they had sex. She said that she screamed for help and fought Jones but that neither Jones's mother nor his brother responded.[1] She said that Jones ultimately had vaginal intercourse with her and that her clothes were ripped during the offense.

{¶ 4} S.W.'s medical records indicate that she identified Jones as her attacker and that at the time of her forensic exam, she was still wearing the clothes she wore at the time of the alleged rape.

{¶ 5} In the week after the alleged rape, police officers twice unsuccessfully attempted to locate S.W. at the address listed in the incident report.

---

[1] Jones's counsel contested S.W.'s identification of the other individual as Jones's brother but did not identify the individual.

A police report dated September 8, 1993 characterizes the address listed for S.W. as "a bad address." There is no indication that the officers made any other attempt to contact S.W. And despite S.W.'s identification of Jones by name and address, the report states, "Until such time as the victim comes forth and assist[s] in this investigation we have no further investigative leads." The record does not reveal that the police took any other investigative steps, such as photographing S.W. or the alleged crime scene, collecting S.W.'s clothing or other physical evidence, or interviewing potential witnesses. Rather, the report states that Jones "is no longer wanted" in connection with the case.

{¶ 6} Even though S.W. had identified Jones, the Cleveland Police Department sent S.W.'s rape kit to the Ohio Bureau of Criminal Investigation ("BCI") for DNA testing in September 2011, 18 years after the alleged rape, as part of Ohio's sexual-assault-kit testing initiative. BCI informed the Cleveland Police Department in August 2012 that the testing of swabs from the rape kit resulted in two DNA profiles—one consistent with S.W. and one consistent with Jones. In June 2013, BCI informed the Cleveland Police Department and the Cuyahoga County prosecutor's office that DNA from the rape kit matched a sample of Jones's DNA in the Combined DNA Index System.

{¶ 7} On August 30, 2013, one day before the expiration of the 20-year statute of limitations that was applicable at the time,[2] the Cuyahoga County Grand Jury returned an indictment, charging Jones with rape and kidnapping.

{¶ 8} Jones filed a motion to dismiss the indictment with prejudice in the Cuyahoga County Court of Common Pleas, based on unconstitutional preindictment delay. He argued that as a result of the state's delay in pursuing the

---

[2] Effective July 16, 2015, the General Assembly extended the limitations period for rape in R.C. 2901.13(A) from 20 years to 25 years. *See* 2015 Sub.H.B. No. 6. The amended statute also established special rules for rape and sexual-battery cases in which a DNA match is made. In those cases, prosecution may be commenced within the longer of 25 years after the offense is committed or five years after the DNA match is made. R.C. 2901.13(D)(1) and (2).

indictment, his mother, Patricia Ann Watkins, who S.W. alleged to have been present at the time of the alleged rape and who died in 2011, was no longer an available witness. Jones also argued that he is prejudiced by the unavailability of S.W.'s 911 call and any physical evidence, including S.W.'s clothing. Jones argued that the delay was not justified because, Jones asserts, contrary to the supposed inability to locate S.W., the Cleveland Police Department arrested S.W. on numerous occasions subsequent to the alleged rape. And at a hearing on Jones's motion to dismiss, his attorney argued that the belated DNA match did not justify the delay because Jones's identity was not unknown. The trial court granted Jones's motion to dismiss, noting prejudice from the loss of physical evidence and the death of Jones's mother.

{¶ 9} The Eighth District affirmed in a divided en banc decision. The majority evaluated Jones's claim "in terms of basic concepts of due process and fundamental justice" and concluded that Jones suffered actual prejudice as a result of the nearly 20-year delay between the alleged offenses and the indictment. 2015-Ohio-2853, 35 N.E.3d 606, ¶ 47-48. The dissent, however, criticized the majority's "new so-called 'due process and fundamental justice' standard" as "in conflict with the long-standing actual or substantial prejudice standard that has been in play over the past three decades in Ohio." *Id.* at ¶ 51 (S. Gallagher, J., dissenting). The dissent reasoned that Jones could not demonstrate actual prejudice, in part because he has no way to demonstrate what his mother's testimony would have been. *Id.* at ¶ 54.

{¶ 10} We accepted the state's discretionary appeal. 143 Ohio St.3d 1542, 2015-Ohio-4633, 40 N.E.3d 1179.

*Analysis*

{¶ 11} The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution "the right to a speedy and public trial." But on its face, the Sixth Amendment provides no protection to those who have not

4

yet been accused; it does not "require the Government to discover, investigate, and accuse any person within any particular period of time." *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Statutes of limitations provide the ultimate time limit within which the government must prosecute a defendant—a definite point "beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *Id.* at 322. *See also United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (stating that statutes of limitations provide predictable limits to prevent initiation of overly stale charges). But when unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial, despite the state's initiation of prosecution within the statutorily defined limitations period, the Due Process Clause affords the defendant additional protection. *Id.*

{¶ 12} This court has stated succinctly that preindictment delay violates due process only when it is unjustifiable and causes actual prejudice: "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law" under the United States and Ohio Constitutions. *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus.

{¶ 13} And we have firmly established a burden-shifting framework for analyzing a due-process claim based on preindictment delay. Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99.

{¶ 14} Here, the state argues that the Eighth District's majority opinion breaks from well-established precedent requiring a defendant to establish actual

prejudice—separate from the state's reasons for the delay—before the burden shifts to the state to justify its delay. We agree.

{¶ 15} The Eighth District's majority opinion acknowledges the two-part, burden-shifting test for determining whether preindictment delay amounts to a violation of due process. 2015-Ohio-2853, 35 N.E.3d 606, at ¶ 23. Nevertheless, as we explain below, under the guise of determining the appropriate standard for gauging actual prejudice, the majority blurred the distinctions between the existence of actual prejudice and the lack of a justifiable reason for the delay by focusing almost exclusively on the actions and inactions of the police.

{¶ 16} As to the appropriate test and the shifting burden of proof that applies to a claim of preindictment delay, the dissent got it right. It aptly noted that unjustifiable delay does not violate due process unless it results in actual prejudice. *Id.* at ¶ 51 (S. Gallagher, J., dissenting), citing *Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097, at paragraph two of the syllabus. Accordingly, the dissent reasoned, because Jones failed to carry his burden of establishing actual prejudice, the state had no obligation to present evidence justifying the delay in this case. *See Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 107 (denying relief on claim of unconstitutional preindictment delay without considering reasons for delay when defendant failed to establish prejudice).

{¶ 17} Although the reasons for the preindictment delay are irrelevant to the existence of, and Jones's burden to prove, actual prejudice, the majority concluded:

> [W]here the identity of the defendant as the accused perpetrator was known from the beginning, where the state barely investigated the case and closed it within one week of the start of its investigation, and where no further investigation or technological advances occurred in the time between the initial investigation and

the indictment, we evaluate Jones's claim of actual prejudice in terms of basic concepts of due process and fundamental justice.

{¶ 18} 2015-Ohio-2853, 35 N.E.3d 606, at ¶ 47. The majority's focus on the actions and inactions of the police—including the closing of the police investigation within one week, after cursory attempts to contact S.W. and despite the existence of a named suspect, and the questionable claim that the police could not locate S.W., *id.* at ¶ 45-46—demonstrates the majority's abandonment of the two-step, burden-shifting analysis for determining whether preindictment delay constitutes a due-process violation. By considering the reasons for the state's delay before independently determining whether Jones established actual prejudice because of that delay, the Eighth District majority erred.

{¶ 19} We now turn to the state's second argument—that the Eighth District majority ignored precedent by concluding that Jones established actual prejudice, because the record contains only speculation regarding the exculpatory value of the allegedly lost or otherwise unavailable evidence. Jones responds that a defendant establishes actual prejudice by showing that a preindictment delay led to the loss of "critical information" material to the determination of guilt or innocence.

{¶ 20} A determination of actual prejudice involves " 'a delicate judgment' " and a case-by-case consideration of the particular circumstances. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, quoting *Marion*, 404 U.S. at 325, 92 S.Ct. 455, 30 L.Ed.2d 468. A court must "consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." *Id.* This court has suggested that speculative prejudice does not satisfy the defendant's burden. *Id.* at ¶ 56 (noting that Walls's claims of prejudice were speculative at best); *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 100 (noting the difficulty

for defendants claiming unconstitutional preindictment delay because "proof of prejudice is always speculative").

**{¶ 21}** The "*possibility* that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice." (Emphasis added.) *Id.* at ¶ 105, citing *Marion* at 325-326. Those are "the real possibilit[ies] of prejudice inherent in any extended delay," and statutes of limitations sufficiently protect against them. *Marion* at 326. That does not mean, however, that demonstrably faded memories and actually unavailable witnesses or lost evidence cannot satisfy the actual-prejudice requirement.

**{¶ 22}** The Eighth District majority distinguished between two purported standards for determining the existence of actual prejudice. It referred to the first as the "exculpatory evidence standard," under which the defendant must demonstrate the exculpatory value of the evidence of which he or she has been deprived. 2015-Ohio-2853, 35 N.E.3d 606, at ¶ 14-15, citing *State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415, ¶ 11. That standard, the majority stated, requires the defendant to "show that missing or unavailable evidence would have been exculpatory, as opposed to merely attacking the credibility of the state's evidence." *Id.* at ¶ 14. It contrasted that standard with a second, "less stringent" one based on "concepts of due process and fundamental justice." *Id.* at ¶ 17, 19, citing *State v. Mack*, 8th Dist. Cuyahoga No. 100965, 2014-Ohio-4817, and *State v. Doksa*, 113 Ohio App.3d 277, 680 N.E.2d 1043 (8th Dist.1996).[3] The majority ultimately chose to apply the latter standard in this case.

**{¶ 23}** We reject the Eighth District majority's application of an amorphous standard based on concepts of fundamental justice to determine the existence of actual prejudice. But we also reject the majority's characterization of

---

[3] It is not clear that either *Mack* or *Doksa* applied a less stringent standard to the defendant's burden of establishing actual prejudice. Despite a reference to general due-process principles, later quoted in *Mack*, the *Doksa* opinion emphasizes the independent requirement of actual prejudice as part of the due-process analysis. *Doksa* at 280.

the alternative standard as requiring the loss of evidence with demonstrably exculpatory value that goes beyond attacking the credibility of the state's evidence. Each time this court has considered preindictment delay, we have scrutinized the claim of prejudice vis-à-vis the particular evidence that was lost or unavailable as a result of the delay and, in particular, considered the relevance of the lost evidence and its purported effect on the defense. *See, e.g., Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 52.

{¶ 24} *Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097, offers apt guidance regarding actual prejudice. Luck argued that a 15-year preindictment delay prejudiced her, based on the deaths of two key witnesses, the fading of memories and changing appearances—which resulted in one witness's inability to identify Luck as he had 15 years before—and the loss of evidence, including recorded police interviews of potential witnesses and suspects. *Id.* at 153-154. We balanced those prejudicial factors against the evidence at the time of the indictment to determine whether Luck would suffer actual prejudice were she required to stand trial, and we held that she would. *Id.* at 157-158.

{¶ 25} We reasoned, "[I]t cannot be said that the missing evidence or the dead witnesses would not have minimized or eliminated the impact of the state's circumstantial evidence" connecting Luck to the murder. *Id.* at 157. For example, one of the dead witnesses was purportedly with Luck at the time of the alleged murder, and Luck described that witness as the one person who could have helped her defense. Although there was no record establishing what that witness would have actually testified to, Luck was "obviously prejudiced by not being able to seek verification of her story from [the witness] and thereby establish mitigating factors or a defense to the charge against her." *Id.* at 158. Thus, the proven unavailability of specific evidence or testimony that would attack the credibility or weight of the state's evidence against a defendant, and

thereby aid in establishing a defense, may satisfy the due-process requirement of actual prejudice.

{¶ 26} To be sure, the death of a potential witness will not always constitute actual prejudice. In *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, as in *Luck*, we considered the unavailable evidence in light of the other evidence available at the time of the indictment and in light of its relevance to the defense. We acknowledged that the preindictment death of a witness can constitute prejudice "if the defendant can identify exculpatory evidence that was lost and show that the exculpatory evidence could not be obtained by other means." *Adams* at ¶ 103. Adams, however, did not explain what evidence the deceased witness "might have offered," and, moreover, the deceased witness had actually implicated Adams in the murder before he died; we stated that "[i]f anything, [the witness's] absence at trial was a benefit to Adams's defense." *Id.*

{¶ 27} We agree with the dissent's concerns about a defendant's reliance on mere speculation to support a claim of actual prejudice. *See* 2015-Ohio-2853, 35 N.E.3d 606, at ¶ 52-53 (S. Gallagher, J., dissenting). And as we recognized above, the possibility of faded memories, inaccessible witnesses, and lost evidence is insufficient to demonstrate actual prejudice. Nevertheless, we reject the state's suggestion that any claim of actual prejudice based on the death of a potential witness is too speculative to succeed unless the defendant can establish precisely what that witness would testify to and that the testimony would be directly exculpatory.

{¶ 28} Jones's inability to articulate specifically what his mother's testimony would have been does not render his claim of prejudice fatally speculative. Indeed, we have held that a defendant may establish actual prejudice where he or she is unable to seek verification of his or her story from a deceased witness. *Luck* at 157. *Luck* demonstrates that a defendant need not know what the exact substance of an unavailable witness's testimony would have been in

order to establish actual prejudice based on the witness's unavailability. Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense. *Id.* at 157-158. Although defense counsel acknowledged that he did not know how Jones's mother would have testified at trial—because she was never questioned prior to her death—he offered an explanation of "what exculpatory testimony [the witness] might have offered," *Adams* at ¶ 103.

**{¶ 29}** We decline to decide whether Jones succeeded, on the record before the trial court, in establishing actual prejudice to his ability to defend himself and, if so, whether the state met its burden of establishing a justifiable reason for the delay in bringing charges against Jones. Rather, the court of appeals should make that determination in the first instance, applying the burden-shifting analysis enunciated in *Whiting*, 84 Ohio St.3d 215, 702 N.E.2d 1199, and the actual-prejudice standard from *Luck*, 15 Ohio St.3d 150, 472 N.E.3d 1097.

*Conclusion*

**{¶ 30}** Because the Eighth District majority applied an incorrect standard in its analysis of Jones's preindictment-delay claim, we reverse that court's judgment and remand for a determination of Jones's appeal utilizing the two-part, burden-shifting test outlined in *Whiting* and analyzing Jones's claim of actual prejudice consistent with *Luck* and this opinion.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, and O'NEILL, JJ., concur.

LANZINGER, J., concurs in judgment only.

_____

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Brett Hammond and Daniel T. Van, Assistant Prosecuting Attorneys, for appellant.

Russell S. Bensing, for appellee.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Samuel C. Peterson, Deputy Solicitor, urging reversal for amicus curiae Ohio Attorney General Michael DeWine.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Rachel Lipman Curran, Assistant Prosecuting Attorney, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.

Calfee, Halter & Griswold L.L.P., Georgia W. Yanchar, and Alexander B. Reich; and Goodwin Procter L.L.P., Kevin P. Martin, Alexandra D. Valenti, and Brigid M. Morris, urging reversal for amici curiae Joyful Heart Foundation, Aequitas: The Prosecutors' Resource on Violence Against Women, Rape Abuse Incest National Network (RAINN), Ohio Alliance to End Sexual Violence, and National Alliance to End Sexual Violence.

Timothy Young, Ohio Public Defender, and Terrence K. Scott, Assistant Public Defender, urging affirmance for amicus curiae Ohio Public Defender.

Robert L. Tobik, Cuyahoga County Public Defender, and Erika Cunliffe, Jeffrey Gamso, and Cullen Sweeney, Assistant Public Defenders; and Kevin Spellacy, urging affirmance for amici curiae Cuyahoga County Public Defender and Cuyahoga Criminal Defense Attorneys Association.

Sarah M. Schregardus, urging affirmance for amicus curiae Ohio Association of Criminal Defense Lawyers.

_____