[Cite as *State v. Moore*, 2017-Ohio-1307.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                    :
                                                 :
    *Plaintiff-Appellant*                       :       Appellate Case No. 27196
                                                 :
v.                                               :       Trial Court Case No. 2015-CR-1738
                                                 :
PATRICK JOSEPH MOORE, III                        :       (Criminal Appeal from
                                                 :       Common Pleas Court)
    *Defendant-Appellee*                       :
                                                 :

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of April, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellant

MICHAEL P. BRUSH, Atty. Reg. No. 0080981, 2233 Miamisburg-Centerville Road, Dayton, Ohio 45459
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} The State appeals from an order dismissing charges against defendant-appellee Patrick Moore. The State contends that the trial court erred in finding that Moore's speedy trial and due process rights were violated. We conclude that the record does not support a finding that Moore's rights to a speedy trial or due process were violated. Accordingly, the judgment of the trial court is Reversed and Remanded.

## I. Facts and Procedural History

{¶ 2} In 2009, the Dayton Police Department conducted a sting operation in which an officer, pretending to be a minor, engaged in on-line contact with adults. During the course of the operation Moore, using his personal computer, sent nude pictures of himself to the officer. The images showed Moore engaging in sexual behavior. Moore also used his Blackberry cellular telephone to call and text the officer. On November 13, 2009, Moore was arrested and his cell phone was seized as evidence.

{¶ 3} Moore was indicted on four counts of importuning, one count of possession of criminal tools (the Blackberry phone), one count of attempt to commit unlawful sexual contact with a minor, and six counts of disseminating matter harmful to juveniles. Following plea negotiations, Moore entered a plea of guilty to one count of importuning and one count of disseminating matter harmful to a juvenile. The remaining charges were dismissed, and Moore was sentenced to community control.

{¶ 4} Moore's cell phone remained in the Dayton Police Department property room until 2015, when it was marked for destruction under department guidelines. Prior to being sent out for destruction, the memory card was removed and placed in a plastic bag

along with the memory cards removed from other phones slated for destruction. Upon inspection, the card from Moore's phone was found to have child pornography stored on it.

{¶ 5} On September 24, 2015, Moore was indicted on 26 counts of illegal use of a minor in nudity-oriented material or performance and one count of pandering sexually-oriented material involving a minor. He filed a motion to dismiss the indictment arguing that the new charges arose from the same set of facts and circumstances as the earlier adjudicated charges. Thus, he claimed violations of both his speedy trial and due process rights. A hearing was conducted before the trial court.

{¶ 6} At the hearing, Sergeant Jeffrey Yaney, Dayton Police Department Property Evidence Storage Supervisor, testified that department policy requires that evidence in felony cases be retained for three to five years after conviction. He testified that the evidence is then destroyed, but that there is no set format for the manner in which evidence is destroyed. However, he routinely destroys cell phones by sending them to a third-party recycling company. Yaney testified that he generally gathers phones that are ready for destruction twice a year. He also testified that he removes the memory cards from the phones in order to prevent any private information from being disseminated. Yaney testified that in early 2015 he pulled Moore's phone for destruction. He testified that he placed the memory card, along with cards from other phones, into a plastic bag which he then gave to Detective Mont Rodrigues. He testified that Rodrigues wanted to reformat the cards so that they could be recycled and reused by the department for other purposes. Yaney testified that he also asked Rodrigues to review the memory cards for identifying information so that, in the case of lost phones turned in to the police

department, he could return the cards to their owners. However, he did not separate the memory cards of phones seized as evidence from those that had merely been turned in as lost.

{¶ 7} While attempting to reformat Moore's memory card, Rodrigues discovered a folder that contained over 500 pictures of what appeared to be nude minors along with two videos of children engaging in sexual conduct. He also found a picture of a prescription for Moore. An investigation confirmed that the images involved minors.

{¶ 8} Dayton Police Detective Raymond St. Clair testified that he was the lead detective, and undercover officer, on the 2009 investigation. He testified that he engaged in a computer video chat with Moore, and that nude pictures of Moore appeared on St. Clair's computer screen during the course of the exchange. St. Clair testified that it appeared Moore had used a camera attached to Moore's own computer to transmit the images. He testified that he seized Moore's phone during that investigation because Moore used it to text and make calls to St. Clair, whom Moore believed to be a 15 year old girl. St. Clair testified that he only searched the phone for the call log and text messages. St. Clair further testified that the 2009 investigation did not involve child pornography because Moore did not request pictures of the "minor," and there was no reason to believe that pictures of nude minors would be on the phone.

{¶ 9} The parties stipulated that the court could take judicial notice of the case file and docket from the earlier case. Following the hearing, the trial court concluded that Moore's right to a speedy trial was violated because the police could have discovered the child pornography when the cell phone was seized in 2009. The court also found a violation of Moore's due process rights.

{¶ 10} The State appeals.

## II. The State Did Not Violate Moore's Right to a Speedy Trial.

{¶ 11} The first assignment of error asserted by the State provides:

THE TRIAL COURT ERRED IN FINDING THAT THE STATE VIOLATED MOORE'S STATUTORY RIGHT TO A SPEEDY TRIAL.

{¶ 12} The State contends that it did not violate the speedy trial requirement because it was not aware of the pictures and videos contained on the memory card and because the charges in this case differ from the offenses in the original indictment.

{¶ 13} The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. "In Ohio, that right is implemented by the statutory scheme imposing specific time limits in R.C. 2945.71 et seq." *State v. Kerby*, 162 Ohio App.3d 353, 2005-Ohio-3734, 833 N.E.2d 757, ¶ 17 (2d Dist.), citing *State v. Pachay*, 64 Ohio St.2d 218, 221, 416 N.E.2d 589 (1980). R.C. 2945.71(C)(2) requires the state to bring a person against whom a felony charge is pending to trial within 270 days after the person's arrest. Speedy trial provisions are mandatory, and thus, strictly enforced. *State v. Williams*, 2d Dist. Montgomery No. 18893, 2002 WL 63298, * 1 (Jan. 18, 2002).

{¶ 14} The Ohio Supreme Court has dealt with the speedy-trial issue as it relates to multiple indictments. "When new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitations period that is applied to the original charge." *State v. Adams*, 43

Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989), quoting *State v. Clay*, 9 Ohio App.3d 216, 459 N.E.2d 609 (11th Dist. 1983). The Supreme Court later held that when the State issues a subsequent indictment, it is not subject to the speedy trial time limits of the initial indictment when additional criminal charges arise from facts different from the original charges and the State had no knowledge of these facts at the time of the initial indictment. *State v. Baker*, 78 Ohio St.3d 108, 111, 676 N.E.2d 883 (1997).

{¶ 15} In this case, the trial court found that *Baker* does not apply. The trial court reasoned that the State "did not know of the images on the memory card simply because it chose not to conduct a thorough search of the phone it had seized." The trial court cited to *State v. Matthews*, 2d Dist. Montgomery No. 23051, 2009-Ohio-6694, for the proposition that when the information supporting a subsequent indictment is in the state's possession and control, the speedy trial limitations period applicable to the later actions commences to run on the same date as the earlier action. *Id.* at ¶ 8. We conclude that *Matthews*, based upon the facts of this case, is inapposite.

{¶ 16} In *Matthews*, the defendant, Curtis Matthews, was convicted for theft by deception after he used "his own driver's license and a falsified license issued to 'Curtis Lawrey' to obtain food stamps." *Id.* at ¶ 3. He was later indicted for tampering with records "arising from his conduct in obtaining a falsified driver's license." *Id.* at ¶ 2. Matthews filed a motion to dismiss the later indictment arguing that his right to a speedy trial was violated. *Id.* at ¶ 3. The trial court did not conduct a hearing, but granted the motion upon concluding that "the State had knowledge that these 'different persons' [on the two licenses] were one and the same person, which knowledge formed the basis for its [earlier] indictment." *Id.* at ¶ 5.

**{¶ 17}** On appeal, we noted that "the *Baker* exceptions are not concerned with whether the charges in the prior and subsequent actions allege different grounds for criminal liability. The question is whether in order to prove the charges in both cases the State must prove a set of facts common to both charges, and whether the State knew of those facts when the earlier action was filed." *Matthews* at ¶ 9. In other words, "to prevail on his speedy trial motion, [Matthews] was required to show that the State was aware [in the earlier case] that [he] had obtained a falsified driver's license, not merely that he used a falsified license to commit a theft." *Id.* at ¶ 10. We remanded the matter because we found the trial court erred by failing to conduct an evidentiary hearing. *Id.* at ¶ 12.

**{¶ 18}** At the evidentiary hearing following remand, Matthews submitted "the discovery packet that the State of Ohio provided to [his] counsel for the [earlier] theft case. Contained therein were copies of each of [Matthews'] driver's licenses and LEADS images of [Matthews] which include the two separate photographs, each of [Matthews], from the respective driver's licenses. Also included [was an] investigator's report documenting an interview with [Matthews'] mother which confirmed that [he] did not have a twin." *State v. Matthews*, 2d Dist. Montgomery No. 23953, 2011-Ohio-2067, ¶ 7. The trial court, again, dismissed the indictment. *Id.* at ¶ 10. We affirmed, noting that the State was aware of the existence of the two licenses, and the pictures in the State's own database established that Matthews was the person who had applied for and acquired both licenses. *Id.* at ¶ 17 and 23.

**{¶ 19}** We find the facts in *Matthews* distinguishable from this case. This record is devoid of any evidence to support a finding that the State was aware of the existence

of the child pornography contained on Moore's phone. Further, the only fact common to both charges is that evidence in both cases was contained on Moore's phone, albeit in different files on the phone. Moore does not claim, nor can we conclude, that the child pornography stored on the phone had relevance to the charges from the 2009 case. St. Clair testified regarding the fact that he needed the phone in the prior case for the sole purpose of demonstrating that Moore had called and texted the "minor" in the police sting. He further testified that there was nothing to indicate that Moore had child pornography on the phone, as Moore did not seek nude photos of the "minor."

{¶ 20} The trial court's holding places a duty on the police to completely search the contents of the phone simply because it was in their possession. But *Matthews* does not set forth such a requirement. The involvement of the phone as a criminal tool in the 2009 case was limited to calling and texting. There was nothing to indicate that Moore collected and stored child pornography on it. As St. Clair stated, he only needed to show that Moore was using the phone to text and call the "minor" in order to prove the charges in the 2009 case.

{¶ 21} On these facts, we conclude that the trial court erred in finding that the State violated Moore's right to a speedy trial. The first assignment of error is sustained.

### III. The State Did Not Violate Moore's Right to Due Process.

{¶ 22} The State's second assignment of error is as follows:

THE TRIAL COURT ERRED IN FINDING THAT MOORE'S RIGHT TO DUE PROCESS WAS VIOLATED BY PREINDICTMENT DELAY.

{¶ 23} Moore contends that he has suffered actual prejudice due to the delay in time between the indictments. Specifically, he argues that since the phone is no longer

available, he cannot submit it to expert analysis. Thus, he claims that there is no way to determine "how, when, or by whom the alleged illegal content was added to the memory card." Moore contends it is possible the memory card came pre-loaded with the images at the time he acquired it. He further argues that he has "lost his ability to make a chain of custody argument."

{¶ 24} Delay between a defendant's involvement in alleged criminal conduct and an indictment involving such conduct may deprive a defendant of his constitutionally protected due process rights. *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph 2 of the syllabus. In *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, the Ohio Supreme Court recently reiterated that "* * * preindictment delay violates due process only when it is unjustifiable and causes actual prejudice." *Id.* at ¶ 12. The court also reaffirmed its firmly established "burden-shifting framework for analyzing a due-process claim based on preindictment delay [which states that] [o]nce a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay." *Id.* at ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99.

{¶ 25} A reviewing court must scrutinize a defendant's claim of prejudice by "consider[ing] the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 20. "* * * [S]peculative prejudice does not satisfy the defendant's burden." *Id.* "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the

impact of the state's evidence and bolster the defense." *Id.* at ¶ 28.

**{¶ 26}** We find Moore's argument speculative at best. Indeed, he appears to contradict his own argument that the phone is necessary for a determination of whether he downloaded the pornography. As he notes, Rodrigues's testimony indicates that "the possibilities of how the alleged illegal information ended up on [his] memory card are endless[,]" as memory cards can store data without a phone. Thus, under his own argument, it follows that he could have downloaded the images independent, and without the use, of the cell phone.

**{¶ 27}** Moore's claim that he cannot make a chain of custody argument also lacks merit. "Breaks in the chain of custody go to the weight afforded the evidence - not the admissibility of the evidence." *State v. Rajchel*, 2d Dist. Montgomery No. 19633, 2003-Ohio-3975, ¶ 21. Nothing in this case prevents him from arguing that the State failed to maintain an adequate chain of custody after the memory card was removed from the phone.

**{¶ 28}** We conclude that Moore has failed to establish actual prejudice. Thus, we need not address whether the delay was justifiable. However, given our resolution of the first assignment of error, we conclude that the State established reasonable justification for the delay. Accordingly, the second assignment of error is sustained.

### IV. Conclusion

**{¶ 29}** The State's assignments of error being sustained, the judgment of the trial court is reversed and this cause is remanded to the trial court for further proceedings consistent with this opinion.

. . . . . . . . . . . .

HALL, P.J. and WELBAUM, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Michael P. Brush
Hon. Richard Skelton