[Cite as *State v. Lynch*, 2019-Ohio-4297.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                                      :
                                                                              :
    Plaintiff-Appellee                              :          Appellate Case No. 28291
                                                                              :
v.                                                                          :          Trial Court Case No. 2018-CR-275
                                                                              :
WESLEY LYNCH                                                :          (Criminal Appeal from
                                                                              :           Common Pleas Court)
    Defendant-Appellant                           :
                                                                              :

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of October, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** After the trial court overruled his motion to dismiss, Wesley Lynch pled no contest[1] in the Montgomery County Court of Common Pleas to having weapons while under disability, a third-degree felony. The trial court found him guilty and sentenced him to community control. Lynch appeals, claiming that the trial court erred in denying his motion to dismiss. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

**{¶ 2}** According to Detective Brian Dedrick's testimony at the hearing on the motion to dismiss, Dayton police officers executed a search warrant on October 5, 2015, at a duplex on Third Street. The building was divided into upper (Unit B) and lower (Unit A) residences; the search warrant was for Unit A. Unit A had two bedrooms and a common bathroom. Officers found a Kel-Tech 380 handgun, along with court-related paperwork belonging to Lynch and a cell phone, on top of the vanity in the bathroom; Dedrick described the vanity as approximately seven feet tall. The record does not provide additional details about the search of the residence, but we infer, based on the indictment, that drug paraphernalia also was located during the search.

**{¶ 3}** Four individuals, including Lynch, were in Unit A during the execution of the warrant. Dedrick asked Lynch about the gun. Lynch told Dedrick that he did not have any knowledge of the gun or anything else found during the search.

---

[1] The trial court's judgment entry incorrectly states that Lynch entered a guilty plea. This typographical error may be corrected with a nunc pro tunc entry.

{¶ 4} The police ordered DNA testing of the gun. The results, which were available in June 2016, indicated that Lynch's DNA was on the gun. The case was ultimately presented to the Prosecutor's Office for consideration in January 2018.

{¶ 5} On April 11, 2018, Lynch was indicted for having weapons while under disability and possession of drug paraphernalia, both based on conduct that allegedly occurred on October 5, 2015. In June 2018, Lynch moved to dismiss the indictment, claiming unjustifiable preindictment delay by the State. Lynch argued that his father, now deceased, was the only person who could state how the gun came to be on top of the vanity where it was found. The State opposed the motion, noting that Lynch's father was not interviewed at the time of the incident, and two other individuals were present and living in the home at the time of the offense. The State asserted that any prejudice was speculative.

{¶ 6} The trial court held a hearing on the motion to dismiss on August 24, 2018, during which Detective Dedrick and Lynch testified. When asked why the case was presented in January 2018, Dedrick responded, "I saw the case needed to be presented and presented it." (Tr. at 16.)

{¶ 7} Lynch testified that his father, Wesley Mosley, leased Unit A, and that he (Lynch), his uncle, and his girlfriend sometimes stayed there. The three men and Lynch's girlfriend were present at the residence on October 5, when the search warrant was executed. All four individuals were arrested that day.

{¶ 8} Lynch testified that the Kel-Tech handgun belonged to his father, and stated that his father had owned it "for a couple years." Lynch said that he had seen the weapon "a little bit before" 2014, prior to his father's moving into Unit A. Lynch explained that he

had handled the gun, moving it or putting it under a mattress when his father left it around. Lynch indicated, however, that he had "never handled it after that," and had never seen the gun at the Third Street residence. When asked if he knew how the gun came to be on top of the vanity, Lynch responded, "You'd have to ask my dad." (Tr. at 20.) He stated that he did not see his father put it there and had no idea how it got there. (*Id.* at 21.) Lynch testified that his father died in January 2017 (a year prior to the indictment).

{¶ 9} On cross-examination, Lynch indicated that he recognized the court-related paperwork as belonging to him, and he acknowledged that it was dated March 20, 2015. When asked how his court paperwork had gotten on top of the vanity, Lynch again responded, "Something you have to ask my dad." (Tr. at 25.) However, Lynch acknowledged that he did not know if his father was the person who put the gun on top of the vanity. (*Id.* at 26.)

{¶ 10} On November 8, 2018, the trial court overruled the motion to dismiss, reasoning that Lynch had not shown actual prejudice and "did not show that the exculpatory evidence could not be obtained by other means." Lynch subsequently pled no contest to having weapons while under disability, in exchange for which Lynch agreed to forfeit the weapon and the State agreed to dismiss the drug paraphernalia charge. The court subsequently sentenced Lynch to community control.

{¶ 11} Lynch appeals, claiming that the trial court erred in denying his motion to dismiss.

## II. Preindictment Delay

{¶ 12} "Delay between a defendant's involvement in alleged criminal conduct and an indictment involving such conduct may deprive a defendant of his constitutionally

protected due process rights." *State v. Moore*, 2017-Ohio-1307, 88 N.E.3d 593, ¶ 24 (2d Dist.), citing *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus. However, "preindictment delay violates due process only when it is unjustifiable and causes actual prejudice[.]" *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12. Therefore, "[w]hen a defendant alleges that he has been prejudiced by the State's pre-indictment delay in pursuing a case, the defendant must first produce evidence demonstrating that the delay has caused actual prejudice to his [or her] defense." *State v. Shoopman*, 2d Dist. Montgomery No. 27182, 2017-Ohio-2612, ¶ 8, citing *Luck* at 157-158. "Then, if the defendant has established actual prejudice, the State must produce evidence of a justifiable reason for the delay." *Id.*, citing *Luck* at 158.

{¶ 13} "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Jones* at ¶ 28, citing *Luck* at 157-158. "A determination of actual prejudice involves ' "a delicate judgment" ' and a case-by-case consideration of the particular circumstances." *Id.* at ¶ 20, quoting *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, quoting *United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). "[S]peculative prejudice does not satisfy the defendant's burden." *Id.*

{¶ 14} "A reviewing court must scrutinize a defendant's claim of prejudice in light of the particular evidence that was lost or is unavailable as a result of the delay and, in particular, consider the effect of the lost evidence on the defense[.]" *Shoopman* at ¶ 9, citing *Jones* at ¶ 23; *State v. Morgan*, 2d Dist. Clark No. 2018-CA-103, 2019-Ohio-3691,

¶ 86-88. "The death of a potential witness during the preindictment period can constitute prejudice, but only if the defendant can identify exculpatory evidence that was lost and show that the exculpatory evidence could not be obtained by other means." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 103.

{¶ 15} The Ohio Supreme Court has commented that "[t]he burden upon a defendant seeking to prove that preindictment delay violated due process is ' "nearly insurmountable," ' especially because proof of prejudice is always speculative. *Adams* at ¶ 100, citing *United States v. Montgomery*, 491 Fed.Appx. 683, 691 (6th Cir.2012).

{¶ 16} On the record before us, the trial court did not err in denying Lynch's motion to dismiss. The parties agree that Lynch's DNA was found on the handgun, and Lynch acknowledged that he had previously handled the gun, although he claimed that the handling occurred prior to 2014 and prior to his father's living at the Third Street residence.

{¶ 17} Although Lynch stated that his father would know how the gun and his court paperwork came to be on top of the vanity, Lynch acknowledged on cross-examination that he did not see his father place the gun on the vanity and he did not know if his father was the person who put the gun on top of the vanity. Lynch's father was not interviewed at the time of the offense, and there is nothing in the record to suggest that he made a formal statement at any time thereafter. Based on the record, it is speculative whether Lynch's father put the gun on the vanity or otherwise knew who placed it there. Likewise, it is possible that Lynch's uncle and girlfriend, who were living at the residence and present when the police executed the search warrant, could provide information about how the gun came to be on the vanity. Accordingly, Lynch failed to establish that exculpatory evidence was lost as a result of his father's death and that the evidence could

not be obtained by other means.

{¶ 18} Lynch's assignment of error is overruled.

### III. Conclusion

{¶ 19} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck
Lisa M. Light
Robert Alan Brenner
Hon. E. Gerald Parker Jr.