[Cite as *State v. Morris*, 2025-Ohio-3273.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,              :

                              No. 113777

    v.                               :

HERMAN MORRIS,                           :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 11, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-663902-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Shannon Musson, Assistant Prosecuting Attorney, *for appellee.*

Scott J. Friedman, *for appellant.*

EILEEN A. GALLAGHER, A.J.:

{¶ 1} Herman Morris ("Morris") appeals the trial court's denial of his motion for relief from prejudicial joinder and also argues that his trial counsel was ineffective for failing to raise the issue of preindictment delay. Upon review of the record, we disagree.

**Facts and Procedural History**

{¶ 2} Morris was charged on October 14, 2021 with six counts related to crimes committed against Jane Doe 1 and Jane Doe 2. The charges were as follows:

Count 1: rape, in violation of R.C. 2907.02(A)(2), of Jane Doe 1 on or about July 19, 2015;

Count 2: rape, in violation of R.C. 2907(A)(1)(c), of Jane Doe 1 on or about July 19, 2015;

Count 3: gross sexual imposition in violation of R.C. 2907.05(A)(1), of Jane Doe 1 on or about July 19, 2015;

Count 4: gross sexual imposition in violation of R.C. 2907.05(A)(1), of Jane Doe 1 on or about July 19, 2015;

Count 5: rape, in violation of R.C. 2907.02(A)(2), of Jane Doe 2 on or about November 1, 2015;

Count 6: rape, in violation of R.C. 2907.02(A)(1)(c), of Jane Doe 2 on or about November 1, 2015.

All counts included sexually violent predator specifications.

{¶ 3} Morris was arraigned on October 20, 2021, where he pled not guilty. On September 15, 2022, Morris filed a motion "to sever the counts that pertain to each alleged victim contained in the indictment," which the State opposed. The court held a hearing on Morris' motion, deferred ruling and, ultimately, failed to issue a ruling.

{¶ 4} At the conclusion of a jury trial, the jury found Morris guilty of Counts 2 and 6 for rape against both Jane Doe 1 and Jane Doe 2. The jury also found Morris guilty of Count 4, gross sexual imposition, against Jane Doe 1. Morris, having

waived a trial by jury on the sexually violent predator specifications, was found not to be a sexually violent predator by the court on all counts.

{¶ 5} At sentencing, Count 4 was merged into Count 6 and the State elected to go forward on Count 6. The trial court sentenced Morris to nine years in prison on Count 2 and nine years in prison on Count 6, to run consecutively, for a total of 18 years in prison.

{¶ 6} Morris timely appealed raising two assignments of error for our review:

**Assignment of Error 1**: The trial court abused its discretion in denying the Appellant's Motion for Relief from Prejudicial Joinder.

**Assignment of Error 2**: The Appellant was denied the effective assistance of counsel, in derogation of his rights under the Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

**Relevant Evidence Presented at Trial**

{¶ 7} Jane Doe 1 testified that she met Morris and exchanged phone numbers and Snapchat information with him. They agreed to meet on July 18, 2015 at his house where she had consumed a couple beers. They then walked from Morris' house to a local bar where Jane Doe 1 drank one vodka, neat. She went outside the bar to talk to people and, when she returned, Morris gave her another drink that he had ordered for her.

{¶ 8} Jane Doe 1 did not finish this drink and went to the restroom because she was feeling unwell. That is the last thing Jane Doe 1 remembered before waking up, naked, in Morris' house the next morning.

**{¶ 9}** Jane Doe 1 testified that when she awoke, she felt "soreness in my vagina. Like there had been sexual contact." After returning home, that same day, Jane Doe 1 called the Cleveland Rape Crisis Center and then traveled to Hillcrest Hospital where a rape kit was collected. Jane Doe 1 declined to speak with the police because it was "all too much at once."

**{¶ 10}** Jane Doe 1 never spoke with Morris after this and Morris never attempted to contact her. She testified that she did not consent to any sexual encounters with Morris nor did she consent to Morris' DNA being in the intimate parts of her body. Officer John Popielarczyk ("Popielarczyk"), a Maple Heights police officer, testified that he was employed from 2019-2022 by the Cuyahoga County Prosecutor's Office Sexual Assault Kit Task Force ("SAKTF") as a special investigator. Popielarczyk assisted SAKTF investigator Brian Katigbak ("Katigbak") by conducting a blind photo array, which included Morris as well as individuals who look like him. Jane Doe 1 positively identified Morris in the lineup as the man who raped her.

**{¶ 11}** Diane Daiber ("Daiber"), a certified sexual assault nurse examiner ("SANE nurse"), testified that she performed the sexual assault examination of Jane Doe 1 at Hillcrest Hospital. She stated that Jane Doe 1 had scratches on her knees, abrasions on the vulva of her genitalia and three linear abrasions close to her hymen. Daiber was the sole person responsible for the collection of Jane Doe 1's sexual assault kit ("SAK").

{¶ 12} Cleveland Division of Police Patrol Officer Lakisha Harris testified that she retrieved the SAK from Hillcrest Hospital and placed this evidence in a secured, temperature-controlled room.

{¶ 13} SAKTF investigator Gene Kulp testified that he submitted the SAK and buccal swabs from Morris and Jane Doe 1 to the Ohio Bureau of Criminal Investigation ("BCI").

{¶ 14} The State then presented testimony from BCI laboratory supervisor Kylie Graham ("Graham"), a forensic scientist, as an expert witness. Graham testified that semen was identified in Jane Doe 1's underwear that matched Morris' DNA profile. Graham also analyzed Morris' buccal swabs and, when compared with the SAK evidence from Jane Doe 1, concluded Morris was a contributor to the DNA swabs from Jane Doe 1's inner thighs, breast and nipple area.

{¶ 15} Jane Doe 2 then testified. She stated that she met Morris through a dating application and they arranged to meet in person on October 31, 2015 at the Harry Buffalo. Jane Doe 2 ordered one glass of wine. She went to the bathroom and, when she returned, there was a shot glass of alcohol that Morris had procured for her. Jane Doe 2 testified that she did not intend to drink a lot that night because she had to drive. Jane Doe 2 testified that she did consume the shot Morris had ordered for her, she blacked out and she did not remember anything until awaking the following morning with no clothes on, in her bed, feeling as if she had engaged in sexual intercourse.

{¶ 16} She testified that she had no intention of having sexual relations with Morris.

{¶ 17} Jane Doe 2 went to the hospital and underwent testing. Jane Doe 2 met with Morris at a restaurant to find out what happened between them and Morris told her she threw up on herself, which is why he had to remove her clothes. Morris did not mention any sexual relations occurring between them. Morris continued to message Jane Doe 2 until she told him to stop contacting her or she would call the police. She testified that she did not immediately speak to the police because she was not in a space mentally to handle it. She never consented to have sexual relations with Morris.

{¶ 18} Paulding County Sheriff's Deputy Tiffany Bennett ("Bennett"), a detective from their criminal investigations division, testified that investigator Katigbak reached out to her for assistance because Jane Doe 2 was now living in Paulding County. Bennett testified that she acted as the blind administrator of a photo array for Jane Doe 2 wherein Jane Doe 2 identified Morris as her assailant.

{¶ 19} Former Cleveland Heights Patrol Officer Daniel Lastoria ("Lastoria") testified that he was contacted by a University Hospital's Ahuja Medical Center SANE nurse to pick up a SAK. Lastoria testified that he did not speak with Jane Doe 2. He also testified that it was not uncommon for sexual assault victims to not want to pursue charges due to fear of their attackers and of police officers in general. Lastly, Lastoria testified that he put Jane Doe 2's SAK into evidence in the Cleveland Heights Police Department in a secure, temperature-controlled room.

{¶ 20} BCI forensic scientist Samuel Troyer ("Troyer"), who testified as an expert witness, stated that the sperm found in both the vaginal and anal samples from Jane Doe 2's SAK was a match for Morris' DNA that was in their database.

{¶ 21} SAKTF investigator Katigbak testified that he investigated Jane Doe 1's case and interviewed her and that he also investigated Jane Doe 2's case and interviewed her as well.

{¶ 22} The defense called Morris to testify. Morris testified that he went on dates with both Jane Doe 1 and Jane Doe 2 on the dates alleged and that he engaged in consensual sex with them. He stated that neither woman appeared to be intoxicated or impaired to him at any point in the evening.

## Law and Argument

### Assignment of Error 1: Denial of Morris' Motion for Relief from Prejudicial Joinder

{¶ 23} Morris' first assignment of error alleges that the trial court abused its discretion when it denied his motion for relief from prejudicial joinder. We disagree.

#### Standard of Review

{¶ 24} An appellate court reviews a trial court's ruling on a motion from relief of prejudicial joinder for an abuse of discretion. *State v. Lee*, 2017-Ohio-1449, ¶ 15 (8th Dist.). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

## Crim.R. 8

{¶ 25} Crim.R. 8(A) governs joinder and provides that "[t]wo or more offenses may be charged in the same indictment" if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Joinder is generally permitted to "conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58 (1992).

## Crim.R. 14

{¶ 26} Crim.R. 14 governs relief from prejudicial joinder and provides, in part, the following:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment . . . the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires.

Charges shall be severed under Crim.R. 14 if the joinder will prejudice the moving party's rights. Crim.R. 14. The defendant "bears the burden of proving prejudice and of proving that the trial court abused its discretion in denying severance." *State v. Brinkley*, 2005-Ohio-1507, ¶ 29.

{¶ 27} If the defendant is able to prove prejudice, the State can refute a defendant's claim of prejudice by proving either (1) that evidence of the separate crimes would be admissible even if the counts were severed; or (2) that the evidence

of each crime is simple and direct. *State v. Kramer-Kelly*, 2023-Ohio-1031, ¶ 66 (8th Dist.).

{¶ 28} Under the "simple and direct" test, a defendant is not prejudiced by joinder when each crime can be proven by simple and direct evidence, such that a jury is likely to be able to segregate the proof required for each offense. *Brinkley* at ¶ 30. Evidence is simple and direct if it satisfies four requirements: "'if the jury is capable of readily separating the proof required for each offense, if the evidence is unlikely to confuse jurors, if the evidence is straightforward, and if there is little danger that the jury would "improperly consider testimony on one offense as corroborative of the other."'" *Kramer-Kelly* at ¶ 85, quoting *State v. Wright*, 2017-Ohio-8702, ¶ 52 (4th Dist.).

{¶ 29} Morris argues he was prejudiced by the joinder of Jane Doe 1's case with Jane Doe 2's case. Specifically, he argues that at trial, the State bootstrapped the evidence of one case to support the guilty verdict for the second case. Morris also argues that during the State's cross-examination of Morris and in the State's closing argument, the State encouraged the jury to assume Morris was guilty because he faced allegations related to two separate victims.

{¶ 30} Morris cites to several cases for examples of prejudice, but none of them factually match this case except for one, *Kramer-Kelly*, 2023-Ohio-1031. *Kramer-Kelly* is one of the most recent and factually similar case cited by Morris concerning prejudicial joinder from this court. In that case, like Morris, the defendant was accused of sexually assaulting two women he met at a bar while they

were substantially impaired. *Id.* at ¶ 11, 33. As in Morris, charges for both victims were included in a single indictment and the trial court denied the defendant's request to sever the joinder. *Id.* at ¶ 4. This court found that the strength of the evidence to support the charge in the one case was not as strong as the evidence to support the charge for the second case. Because of that, this court found the single trial concerning both victims prejudiced the defendant because a jury was permitted to "apply or accumulate" evidence from one of the assaults to support the evidence of the other assault. *Id.* at ¶ 70-71.

{¶ 31} Further, after finding prejudice, this court went on to find that the State failed to refute the claim of prejudice by failing to establish that either "(1) the evidence of the separate crimes would be admissible even if the counts were severed, or (2) that the evidence of each crime is simple and direct." *Id.* at ¶ 66. This court found that "the evidence from either case would be inadmissible character or propensity evidence, in violation of Evid.R. 404(B)." It also found that the evidence was not simple or direct because the State bootstrapped the evidentiary strength of one charge to support the guilty verdict on another charge and thereby prejudiced the defendant and undermined his right to a fair trial. *Id.* at ¶ 70-71, 90.

{¶ 32} In this case, unlike *Kramer-Kelly*, the evidence concerning both Jane Doe 1 and Jane Doe 2 was not presented in such a way that the jury would be able to apply evidence from one sexual assault to justify the other. Each claim was considered on its own merits with its own testimony and evidence unlike *Kramer-Kelly* where the evidence was presented in such a way that it was difficult for the

jury, and even this court, to follow. *Id*. at ¶ 88 ("In point of fact, this court had a difficult time piecing together who was testifying about whom."); *compare State v. Lewis*, 2010-Ohio-4202, ¶ 33 ("Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof.").

{¶ 33} Here, the evidence was presented in an orderly fashion as to the separate offenses/victims without any significant overlap. For example, for the first incident with Jane Doe 1, the State put forth testimonial evidence of Jane Doe 1 along with medical evidence and DNA experts' testimony related solely to Jane Doe 1. The State then put forth Jane Doe 2's case where Jane Doe 2 testified about what happened and they also presented medical evidence and DNA experts' testimony and documents related to her assault. The two cases had separate police departments, hospital records and different expert witnesses and forensic scientists. There was only one witness, the toxicologist, that testified out of order and there was only one witness, Katigbak, who testified regarding Jane Doe 1 and Jane Doe 2. Otherwise, the evidence was presented methodically for Jane Doe 1 and then evidence was presented for Jane Doe 2's case.

{¶ 34} Furthermore, we find the amount of evidence presented at trial for both claims were essentially equal and straightforward and that there was no bootstrapping of the evidence of one case to support the other. Each claim had sufficient evidence to support the individual charges.

{¶ 35} The State's questioning during Morris' cross-examination elicited testimony from Morris that he faced two different accusers who did not know each other but made similar allegations is not prejudicial. The questioning established that Morris' two accusers did not know each other. Regarding the State's comments during closing argument, Morris argues that the prosecutor prejudiced him by emphasizing the fact that again there were two accusers here with "two very similar stories." Highlighting the fact that there are two accusers here, i.e. two victims, with similar testimony is not prejudicial to Morris as the jury was well aware there were two separate victims from two separate incidents. Morris fails to establish how either of these two instances prejudiced him.

{¶ 36} Because we find Morris was not prejudiced, we need not determine if the State met its burden of proving the evidence of the separate crimes would be admissible even if the counts were severed or that the evidence of each crime is simple and direct. *Kramer-Kelly*, 2023-Ohio-1031, at ¶ 66. However, even assuming arguendo that Morris was able to establish prejudice, we would find the State refuted the claim because the evidence presented for each crime was simple and direct. *Id.*

{¶ 37} Wherefore, we overrule Morris' first assignment of error.

**Assignment of Error 2: Ineffective Assistance of Counsel**

{¶ 38} For his second assignment of error, Morris alleges he received ineffective assistance of counsel when his trial counsel failed to raise the issue of preindictment delay. We disagree.

**Standard of Review**

{¶ 39} To establish ineffective assistance of counsel, a defendant must demonstrate that (1) "counsel's performance fell below an objective standard of reasonable representation," and (2) they were "prejudiced by that performance." *State v. Collier*, 2020-Ohio-3033, ¶ 18 (8th Dist.), citing *State v. Hill*, 2018-Ohio-4327, ¶ 21, (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).

{¶ 40} For the second prong, prejudice is established when the defendant demonstrates "'a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Collier* at ¶ 18, quoting *Strickland* at 694.

{¶ 41} Preindictment delay violates due process when it is unjustifiable and causes actual prejudice. *State v. Jones*, 2016-Ohio-5105, ¶ 12. The Ohio Supreme Court established a burden-shifting framework for analyzing preindictment delay due process claims. *State v. Whiting*, 84 Ohio St.3d 215, 217 (1998). Under this framework, a defendant must present evidence of actual prejudice; if actual prejudice is established, the burden shifts to the State to produce evidence of a justifiable reason for the delay. *Id.*

{¶ 42} "A determination of actual prejudice involves "'a delicate judgment'" and a case-by-case consideration of the particular circumstances." *Jones* at ¶ 20, quoting *State v. Walls*, 2002-Ohio-5059, ¶ 52, quoting *United States v. Marion*, 404

U.S. 307, 325 (1971). "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Jones* at ¶ 28, citing *State v. Luck,* 15 Ohio St.3d 150, 157-158 (1984).

{¶ 43} Morris argues the preindictment delay caused key evidence to be missed, prejudicing him because he was indicted on October 14, 2021 and the charges stem from incidents that occurred in July and November 2015, a six-year delay. Morris argues he was actually prejudiced by this preindictment delay because any evidence the police could have gotten from either of the bars where he went with each Jane Doe, such as witness statements or video footage of the parties, is unavailable. We find the existence of this missing evidence is speculative and do not believe it would have minimized the impact of the State's evidence or bolstered Morris' defense, especially considering the actual crimes occurred when Morris was alone with each Jane Doe and not while they were in public.

{¶ 44} Morris similarly argues the investigation was unable to produce text messages and/or Snapchat messages between the parties because of this delay. Morris does not detail what these missing messages would have established and again this we find this to be incredibly speculative that such unavailable evidence would have minimized the State's evidence or bolstered Morris' defense. Morris fails to demonstrate how this unavailable evidence would have lessened the State's evidence that he raped Jane Doe 1 and Jane Doe 2 or bolstered his defense. *Jones* at ¶ 28.

{¶ 45} As such, we find that Morris cannot prove actual prejudice so he cannot succeed on a claim for preindictment delay and therefore his counsel was not ineffective for failing to advance a motion for dismissal based on preindictment delay.

{¶ 46} Morris's second assignment of error is overruled.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

EMANUELLA D. GROVES, J., and
ANITA LASTER MAYS, J., CONCUR