[Cite as *State v. Hines*, 2019-Ohio-5039.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

       PLAINTIFF-APPELLANT,

    v.

HERBERT HINES,

       DEFENDANT-APPELLEE.

CASE NO. 9-19-07

O P I N I O N

Appeal from Marion County Common Pleas Court
Trial Court No. 18-CR-0347

**Judgment Affirmed**

Date of Decision:  December 9, 2019

APPEARANCES:

    *William J. Owen* and *Margaret S. Moore* for Appellant

    *Brian G. Jones* and *Elizabeth E. Osorio* for Appellee

**WILLAMOWSKI, J.**

{¶1} The State of Ohio, as plaintiff-appellant ("the appellant"), appeals the judgment of the Marion County Court of Common Pleas, alleging that the trial court abused its discretion in finding that the ability of the defendant-appellee, Herbert Hines ("Hines") to defend himself was substantially prejudiced by a preindictment delay of six years. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On April 25, 2012, Marion County Children Services ("MCCS") reported to the Marion County Sheriff's Office ("Sheriff's Office") that Hines was alleged to have committed several sex crimes. Doc. 73. October 19, 2018 Tr. 62. The police began an investigation into these allegations. On April 27, 2012, Hines's residence was searched, and three pornographic DVDs, a cell phone, and two laptops were seized by the police. October 19, 2018 Tr. 16, 24. On June 29, 2012, this seized property was sent to the Ohio Bureau of Criminal Investigation ("BCI"). *Id*. at 24. On December 13, 2012, BCI determined that these items did not have evidentiary value for the prosecution. Doc. 73.

{¶3} During this process, the police discovered evidence of another alleged offense. August 9, 2018 Tr. 15. This offense was distinct from the alleged offenses that MCCS reported to the Sheriff's Office on April 25, 2012. *Id*. at 14. The victim of this alleged offense was Hines's wife. *Id*. at 14-15. In 2012, Hines was charged

with the offense of unlawful sexual conduct with a minor.[1] *Id*. at 14. October 19, 2018 Tr. 62. This charge was subsequently dismissed in 2013. August 9, 2018 Tr. 14. However, at that time, the Marion County Prosecutor's office did not charge Hines with the offenses that are the subject of this appeal even though the prosecutor was aware of these allegations. *Id*.

{¶4} On November 14, 2013, Hines's counsel filed a motion that requested his property be returned. Doc. 73. On January 3, 2014, BCI returned the seized items to the Marion County Sheriff's Office. Doc. 73. On February 19, 2014, the trial court granted Hines's motion to return the seized property without any opposition from the State. Doc. 73. The record indicates that, on March 20, 2014, Hines received at least one laptop,[2] a cell phone, and three pornographic DVDs. Doc. 73. The trial court stated, in its judgment entry that "[t]he investigation was apparently closed in 2013 or early 2014, without charges being filed." Doc. 73.

{¶5} In 2015 or 2016, the former Marion County Prosecutor, Brent Yeager ("Yeager"), had a meeting with the families of two of the alleged victims. Doc. 36, 73. However, the content of the conversations in these meetings was not documented. Doc. 73. Subsequently, Yeager passed away in October of 2017. Doc.

---

[1] During the course of investigating the accusations that form the basis of the charges at issue in this case, the police interrogated Hines and discovered that he and his wife "got together * * * while they were both still in high school." August 9, 2018 Tr. 15. His wife was "14 years, 5 months old at the time." *Id*. at 16. The issue, from the record, appears to be whether Hines was, at that time, "reckless as to age" in his involvement with his future wife. *Id*.

[2] The record indicates that BCI handed an HP laptop and a Gateway laptop to Hines. However, Hines disputes receiving two laptops. He states that he only received the Gateway laptop.

36. August 9, 2018 Tr. 16-17. After the current prosecutor assumed office, an additional review of this case was performed in 2017. Doc. 73. This review process led to a decision to file charges against Hines in 2018, which was over six years after the State first became aware of the accusations against Hines. Doc. 73.

{¶6} On July 11, 2018, Hines was indicted on five counts of rape in violation of R.C. 2907.02(A)(1)(b); one count of pandering sexually oriented material involving a minor in violation of R.C. 2907.322(A)(1); one count of gross sexual imposition in violation of R.C. 2907.05(A)(4); and one count of disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(3)(d). Doc. 1. The indictment alleged that these offenses had been committed in between November 1, 2008 and October 31, 2011. Doc. 1. The count of pandering sexually oriented material and the count of disseminating matter harmful to juveniles were dismissed on October 19, 2018 because these charges were filed after the applicable statute of limitations had run for these crimes. Doc. 44.

{¶7} On September 28, 2018, Hines filed a motion to dismiss for preindictment delay. Doc. 23. On October 18, 2018, the State filed a memorandum in opposition to the defendant's motion for dismissal. Doc. 36. On October 19, 2018, the trial court held a hearing on the defendant's motion. October 19, 2018 Tr. 1. This hearing was continued to December 6, 2018 and then to December 28, 2018. At these hearings, Hines testified about the items that were seized from his house pursuant to a search of the premises. October 19, 2018 Tr. 29. The trial court also

heard testimony from Larry Yoder ("Yoder"), who is an evidence officer for Marion County; Lieutenant Jason Dutton ("Lieutenant Dutton"), who was the primary investigating officer in Hines's case; and Carrie Grogan, who was the placement supervisor at Marion County Children Services. October 19, 2018 Tr. 7-8; December 28, 2018 Tr. 16, 18, 94.

{¶8} On December 31, 2018, the trial court issued its judgment entry deciding this matter. Doc. 73. The trial court found that the documentation in this case was "weak," making a determination as to what evidence had been collected during the course of the investigation difficult to state definitively. Doc. 73. The trial court noted that Lieutenant Dutton testified "that certain items of evidence should be in the possession of * * * Yoder" but "Yoder testified that the items did not exist." Doc. 73. There was also little documentation regarding the review of the electronic devices that had been seized from Hines. Doc. 73.

{¶9} However, the trial court was able to determine that Hines had established that a number of pieces of evidence were missing or otherwise unavailable.[3] Doc. 73. The trial court found that

> **[a]ll of the missing items of evidence are material to this case and are items which the Defendant was entitled to receive as part of discovery. The prosecution appears to have made little to no effort to investigate what has happened with regard to any of the missing items. Nearly all of the evidence which was developed at the hearing as to what items exist or don't exist was due to subpoenas duces tecum issued by the Defendant.**

---

[3] The missing or otherwise unavailable pieces of evidence are detailed in our legal analysis below.

Doc. 73. After considering the facts and testimony gleaned through three hearings on this motion, the trial court found that

> **[h]ad this case been prosecuted years earlier when the investigation was completed and before evidence was disposed of, it is reasonable to believe that all or most of the evidence would exist. Moreover, it would be more possible for the memories of witnesses to fill in any gaps. That is no longer the case. For these reasons, this Court finds that the Defendant has met his difficult burden of establishing substantial prejudice, caused by the delay in prosecution.**

Doc. 73. The trial court then found that the State had not presented a reason that justified this preindictment delay and granted Hines's motion to dismiss. Doc. 73.

*Assignment of Error*

{¶10} The State filed its notice of appeal on January 30, 2019. Doc. 75. The appellant raises the following assignment of error:

> **The trial court abused its discretion by dismissing the case upon finding appellee was substantially prejudiced by preindictment delay.**

The State asserts that the trial court erred in dismissing the indictment, arguing that Hines did not demonstrate actual prejudice from the preindictment delay.

*Legal Standard*

{¶11} "[T]he twofold aim of [the law] is that guilt shall not escape or innocence suffer." *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 108. The Sixth Amendment to the United States Constitution

guarantees a speedy trial to a person who has been accused of a crime. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 11.

> **But on its face, the Sixth Amendment provides no protection to those who have not yet been accused; it does not 'require the Government to discover, investigate, and accuse any person within any particular period of time.' *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). \* \* \* But when unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial despite the state's initiation of prosecution within the statutorily defined limitations period, the Due Process Clause affords the defendant additional protection.**

*Id.* "[P]reindictment delay violates due process only when it is unjustifiable and causes actual prejudice \* \* \*." *Id.* at ¶ 12, citing *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus. "Courts apply a two-part test to determine whether preindictment delay constitutes a due process violation." *State v. Dixon*, 2015-Ohio-3144, 40 N.E.3d 601, ¶ 19 (8th Dist.).

{¶12} First, the defendant bears the initial burden to "produce evidence demonstrating that the delay has caused actual prejudice to his [or her] defense." *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199, 1201 (1998). "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Jones, supra*, at ¶ 28. "The proof of actual prejudice must be specific, particularized and non-speculative." *State v. Strickner*, 10th Dist. Franklin No. 03AP-746, 2004-Ohio-3557, ¶ 36.

{¶13} "[T]he proven unavailability of specific evidence or testimony that would attack the credibility or weight of the state's evidence against a defendant and thereby aid in establishing a defense may satisfy the due-process requirement of actual prejudice." *Jones, supra*, at ¶ 25. However, "the possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 103. In examining the alleged actual prejudice, courts consider "the particular evidence that was lost or unavailable as a result of the delay and, in particular, consider[] the relevance of the lost evidence and its purported effect on the defense." *Jones, supra*, at ¶ 23. "The determination of 'actual prejudice' involves 'a delicate judgment based on the circumstances of each case.'" *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 51, quoting *Marion, supra*, at 325.

{¶14} "A court must 'consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.'" *Jones, supra*, at ¶ 20, quoting *Walls* at ¶ 52. "The key is determining whether actual prejudice resulted from the delay." *State v. Dodson*, 2012-Ohio-5576, 983 N.E.2d 797 (3d Dist.). "The burden upon a defendant seeking to prove that preindictment delay violated due process is 'nearly insurmountable' * * *." *Adams* at ¶ 100, quoting *United States v. Montgomery*, 491 Fed.Appx. 683, 691 (6th Cir. 2012).

**{¶15}** Second, if the defendant carries the burden of establishing actual prejudice, the State then "bears the burden of producing evidence of a justifiable reason for the delay." *Whiting, supra*, 217. The State, however, has no duty to justify a preindictment delay if the defendant does not carry his or her initial burden of demonstrating actual prejudice. *Jones, supra*, at ¶ 16.

> **[D]elay in the commencement of prosecution can be found to be unjustifiable when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant, *see United States v. Marion, supra*, or when the state, through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased. The length of delay will normally be the key factor in determining whether a delay caused by negligence or error in judgment is justifiable.**

*Luck, supra*, at 158.

**{¶16}** "On appeal, a trial court's decision on a motion to dismiss for preindictment delay is reviewed de novo as to the legal issues, but the court's findings of fact are afforded great deference." *State v. Powell*, 2016-Ohio-1220, 61 N.E.3d 789, ¶ 11 (8th Dist.). *State v. Buis*, 2018-Ohio-1727, 111 N.E.3d 854, ¶ 10 (2d Dist.); *State v. Cochenour,* 4th Dist. Ross No. 98CA2440, 1999 WL 152127, *1 (Mar. 8, 1999); *State v. Ricosky*, 5th Dist. Stark No. 2003CA00174, 2004-Ohio-2091, ¶ 13; *State v. Adkins*, 2018-Ohio-2588, 115 N.E.3d 887, ¶ 11 (6th Dist.); *State v. Winkle*, 7th Dist. Mahoning No. 12 MA 162, 2014-Ohio-895, ¶ 23. *See also State v. Burrell*, 11th Dist. Portage No. 1948, 1989 WL 42980, *5 (Apr. 28, 1989)

(holding that "[o]nce the court made the factual determination that prejudice existed and that no justifiable reason existed for the delay, the dismissal became a matter of law.").

*Legal Analysis*

{¶17} In this case, there was a preindictment delay of roughly six years. Hines argues that material evidence was not preserved during this period of time and cannot now be evaluated. At one of the hearings on this motion, Hines argued that the former prosecutor did have all of the relevant information that had been collected during the course of the police investigation and that, on the basis of all of this available evidence, the former prosecutor chose not to seek an indictment against Hines. October 19, 2018 Tr. 62. Hines pointed to the fact that, under the former prosecutor, he had only been indicted for unlawful sexual conduct with a minor when the Marion County Prosecutor's Office was fully aware that he was alleged to have raped a minor. *Id.*

{¶18} Hines then argued that the prosecutor's office did not seek charges on the allegations disclosed by MCCS based upon the evidence available to the State at that time. *Id.* However, Hines noted that only some of the information that led the former prosecutor to not seek charges against him was still available. *Id.* Hines alleged that this preindictment delay resulted in the loss of exculpatory evidentiary materials and caused actual prejudice to his present ability to mount a defense against these charges.

{¶19} Hines compiled a list of the evidentiary items that were missing or currently unavailable. In particular, he points to several missing or lost pieces of evidence: (1) the sexually transmitted disease examination of the defendant; (2) the SANE kits (3) the photographs from the SANE examination; (4) the three pornographic DVDs, two laptops, and cell phone that were seized by the police; (5) the recording of Officer Dutton's interview with Hines; (6) a report from a polygraph examination of one of the alleged victims; (7) the recorded SANE interview of one of the alleged victims; (8) a recorded phone conversation between one of the alleged victims and Marion County Children Services; (9) the photos of the search of Hines's house. December 28, 2018 Tr. 132-133; 134-136, 155; 137-138; 140-143; 143-144; 145-146; 149; 147; 149-152. We will examine the trial court's findings as to each of these missing pieces of evidence.

{¶20} First, the results of Hines's sexually transmitted disease examination were not preserved. Doc. 73. One of his alleged victims tested positive for chlamydia in April of 2012. Doc. 73. In the "State's theory of the case," this chlamydia allegedly came from Hines. Doc. 73. However, Hines was tested for the presence of a sexually transmitted disease in May of 2012. Doc. 73. Based on the transcript of the hearing, it appears that Hines submitted to testing through the probation department pursuant to a court order. December 28, 2018 Tr. 84. These test results indicated that he did not have chlamydia. Doc. 73.

{¶21} At a hearing on the motion to dismiss for preindictment delay, Lieutenant Dutton, who was involved in the police investigation, testified that the prosecutor's office informed him that Hines had tested negative for chlamydia. December 28, 2018 Tr. 83. Lieutenant Dutton, however, stated that he was unaware of who tested Hines and where Hines was tested. *Id*. at 83. Further, he stated that he never received any samples related to Hines's test or any documentation of the test results. *Id*. at 66, 83.

{¶22} The trial court determined that, at this time, no report exists that documents the results of this test. Doc. 73. Hines argued that he was "left without a negative test" from the time of the accusations. December 28, 2018 Tr. 131. The trial court found

> **that the absence of these items does substantially prejudice the Defendant. The presence of chlamydia on the alleged rape victim and not on the Defendant raises some question about the Defendant's guilt. The details regarding this examination, specifically what his test results mean, is critical.**

Doc. 73. The trial court further found that the State's inability to locate this report "disturbing." Doc. 73.

{¶23} Second, Hines's three alleged victims had SANE examinations conducted on April 27, 2012. Doc. 73. However, none of the SANE kits had been preserved. Doc. 73. The SANE examinations were conducted roughly six months after the alleged offenses. December 28, 2018 Tr. 134. Hines's defense counsel then stated the following:

> **What my issue, then, is the State wants to have its cake and eat it too. They want to say "These statements to the SANE examiner are for the purpose of medical diagnosis," on the one hand.**
>
> **And then on the—out of the other side of their mouth, they want to say, "But there was no medical diagnosis to be made, because it was six months later."**
>
> **So I [trial counsel] should be able to demonstrate to the jury * * * it's not just the woman's [SANE nurse's] word, but here's the physical evidence that there is nothing to see.**

December 28, 2018 Tr. 135-136. After considering the testimony at the hearings, the trial court found that the evidentiary value of the physical SANE kits was "unclear." Doc. 73. The trial court further found that the loss of the physical SANE kit was unlikely to prejudice Hines. Doc. 73.

{¶24} Third, as part of one of the SANE examinations, there were colposcope photographs taken to assess whether one of the alleged victims had internal damage from the alleged acts. December 28, 2018 Tr. 134. The nurse's notes state that the alleged victim's vagina was "red." *Id*. at 137. However, there are no photographs to examine to determine the significance of this notation or what the evidentiary value of this "redness" is. *Id*. Hines argued that the nurse, after six years, likely did not remember what these notes mean or what the SANE examination indicated. *Id*. at 137-138. Hines further argued that these photographs were needed to interpret or challenge the findings in the nurse's report. Doc. 73. While the trial court found that the loss of the physical contents of the SANE kits were not necessarily prejudicial, the trial court did find that

**[t]he photographs from the colposcope exam would be important in assessing the reliability of any physical findings from the exam. Without these photographs, all we are left with are the written findings in the report, as it is unlikely that the examiner will have any memory of the examinations.**

Doc. 73.

{¶25} Fourth, Hines did not retain the three pornographic DVDs, two laptops, and cell phone that were seized as part of the police investigation in 2012 after these items were returned to him in 2014. *Id*. at 139. Hines was accused of video recording his accusers on his cell phone and of showing pornography on his computer to his accusers as part of a "grooming process." December 18, 2018 Tr. 141. Hines alleged that BCI never conducted a forensic analysis of these electronic devices even though the State had these items for almost two years. Doc. 23. Hines argued that, without these electronic devices, he could not compare the allegations of the alleged victims to the content of his electronic devices and could not, therefore, assess the reliability and consistency of the allegations against him. December 28, 2018 Tr. 142.

{¶26} After considering these arguments, the trial court found the fact that Hines "did not retain these items" was "not unreasonable given that the case appeared to have been closed." Doc. 73. While the exact parameters of the examinations of these devices was unknown, BCI's report only indicates that "no evidentiary items were located" on these devices. Doc. 73. The trial court also stated that "[t]he Defendant's unrebutted testimony at the hearing was that there was

nothing on the computer that would be consistent with the victims' reports." Doc. 73. The trial court further found that "the absence of the computers or cell phone for further examination prejudices the Defendant's opportunity to present a defense." Doc. 73.

{¶27} Fifth, Lieutenant Dutton testified that he was wearing a body camera when he briefly interviewed Hines. Doc. 73. Lieutenant Dutton stated that Hines refused to be interviewed but that a brief conversation ensued wherein Hines made a number of statements. Doc. 73. Hines alleged that he denied committing the offenses during this interaction with Lieutenant Dutton. December 28, 2018 Tr. 145. Hines stated that he wanted to "bring up every instance" where he denied the allegations to demonstrate that he has consistently done so. December 28, 2018 Tr. 145. However, this recording has not been preserved. Doc. 73.

{¶28} Sixth, one of the alleged victims, C.K., agreed to take a polygraph examination at BCI. Doc. 73. The record indicates that the results of the polygraph examination were inconclusive, but there was no report regarding this examination that could be located. Doc. 73. The trial court found that the absence of this evidence "appeare[d] unlikely to prejudice the Defendant" as "[i]t [was] unclear how * * * [the polygraph examination] could lead to admissible evidence that would benefit the Defendant." Doc. 73.

{¶29} Seventh, one of the alleged victims, J.H., had a SANE examination at a hospital on December 11, 2013. Doc. 73. This examination included a recorded

interview about the allegations. Doc. 73. This video recording, however, could not be located by the time of the hearing. Doc. 73.

{¶30} Eighth, one of the alleged victims, J.H., also had a phone interview with children services. Doc. 73. The social worker attempted to record this interview. Doc. 73. However, this audio recording could not be located at the time of the hearing. Doc. 73. Regarding the recorded SANE interview and the phone interview with children services, the trial court found that "[w]ithout an accurate record of [the alleged victims'] prior statements, it is difficult to assess the reliability of current testimony or compare it with prior statements. All of this effects the Defendant's due process." Doc. 73.

{¶31} Ninth, there are not currently any photographs of the interior of Hines's home that were taken at the time of the police search of his home. Doc. 73. The records of the evidence collected do not indicate whether photographs were taken at the time of the search. Doc. 73. The trial court noted that "it would be standard practice to" have taken photographs at the time of the search. Doc. 73. Hines stated that he has relocated since the time that the police searched his home. December 28, 2018 Tr. 151. Hines argued that without these photographs, he could not effectively cross-examine his accusers as to the setting of the alleged offenses. Doc. 73. The trial court found that "[t]he photographs from the house * * *[,] assuming they were taken, would also be very useful in assessing the testimony of the alleged victims." Doc. 73.

{¶32} After considering the testimony and arguments presented at the hearings on the motion, the trial court found that the absence of the chlamydia test results and the electronic devices were "substantially prejudicial." Doc. 73. The trial court then found that the absence of the "actual SANE kits" and the polygraph test results were "unlikely to prejudice the Defendant." Doc. 73. The trial court also found that the "other remaining missing items of evidence * * * individually are not sufficient to establish prejudice. However, their collective absence could prejudice the Defendant." Doc. 73. The trial court concluded that

> **[h]ad this case been prosecuted years earlier when the investigation was complete and before evidence was disposed of, it is reasonable to believe that all or most of the missing evidence would exist. Moreover, it would be more possible for the memories of witnesses to fill in any gaps. That is no longer the case.**

Doc. 73. On review, we are to give great deference to the factual findings of the trial court. *Powell, supra*, ¶ 11.

{¶33} After examining the relevant case law, the facts of this case appear to present a unique constellation of missing evidentiary materials. In this case, the prosecution's case against Hines relies on the credibility of the alleged victims. *See Winkle, supra*, at ¶ 24. Hines identified specific items of missing evidence to the trial court and explained how the absence these evidentiary materials would prejudice Hines's ability to call the stories of his accusers into question. Hines's argument is not based upon vague assertions or purely speculative arguments.

Several pieces of missing evidence—the electronic devices and the chlamydia test results—directly contradicted several key allegations of Hines's accusers.

{¶34} We turn now to examining whether the State carried its burden of demonstrating that the preindictment delay was justifiable. In its brief, the State only argues that Hines has not carried the burden of establishing actual prejudice and does not present any reason for the six-year delay. The record also does not indicate that the State presented a justifiable reason for this delay to the trial court. In its memorandum in opposition to defendant's motion to dismiss for preindictment delay, the State did not attempt to provide a justification for the six-year delay in filing an indictment against Hines. Doc. 36. Thus, the trial court concluded that "the State has presented no evidence to support the delay in prosecution." Doc. 73.

{¶35} The record does indicate that the State was aware of the identity of the accused at the time that the allegations were made by the victims in 2012. *See State v. Powell*, 8th Dist. Cuyahoga No. 102922, 2016-Ohio-1220, ¶ 23. There is also is no indication that new evidence surfaced. *See Luck, supra*, at 159. In fact, the State stated that the reasons for this delay were unknown due to the passing of the former Marion County Prosecutor. December 28 Tr. 124. August 9, 2018 Tr. 16-17. Doc. 36. Thus, our review of the record does not suggest a possible reason for the State's delay in charging Hines with these offenses. For these reasons, we conclude that the trial court did not err in finding that the State did not carry its burden of establishing that there was a justifiable reason for the six-year delay.

*Conclusion*

**{¶36}** In this case, Hines specifically identified nine missing pieces of evidence and presented arguments as to how the absence of each of these pieces of evidence prejudiced him. After examining these arguments and the facts of this case, the trial court found that Hines had carried the burden of establishing actual prejudice. Further, the State did not present any reason—justifiable or unjustifiable—for this six-year preindictment delay. As a matter of law, we cannot conclude that the trial court erred in dismissing this indictment. For this reason, the State's sole assignment of error is overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Marion County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/hls**