[Cite as *State v. Toney*, 2025-Ohio-2732.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

MICHAEL D. TONEY,

    DEFENDANT-APPELLANT.

CASE NO. 13-24-43

OPINION AND
JUDGMENT ENTRY

Appeal from Seneca County Common Pleas Court
Trial Court No. 24 CR 0104

Judgment Affirmed

Date of Decision:  August 4, 2025

APPEARANCES:

    *Brian A. Smith* for Appellant

    *Stephanie J. Kiser* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Michael D. Toney ("Toney") brings this appeal from the judgment of the Court of Common Pleas of Seneca County finding him guilty of involuntary manslaughter and sentencing Toney to an indefinite prison term of eight to twelve years. Toney claims on appeal that 1) the trial court erred in not granting his motion to dismiss the charges due to pre-indictment delay; 2) he was denied the effective assistance of counsel; and 3) the verdict was against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

*Factual and Procedural Background*

{¶2} On September 10, 2018, a 911 call reporting an unresponsive female inside a home was received by the police dispatch for Fostoria, Ohio. Officer Brian Miller ("Miller") and the paramedics arrived and went into the home. The paramedics attempted to resuscitate the female, but were unsuccessful. Miller later searched the female's room and found what he suspected to be drug paraphernalia and the victim's phone. Miller took the items with him as evidence. Over the years, no possible suspect was identified.

{¶3} Eventually a forensic download of the data on the phone was conducted. Numerous text messages between the victim and a contact identified on the phone as "Mike Toney" were found. Some of the messages appeared to be an arrangement

for the victim to purchase fentanyl from the contact. The investigation led the police to Toney as the suspected person who sold the fentanyl to the victim.

{¶4} On April 4, 2024, the Seneca County Grand Jury indicted Toney on one count of involuntary manslaughter in violation of R.C. 2903.04(A), (C), a felony of the first degree; one count of corrupting another with drugs in violation of R.C. 2925.02(A)(3), (C)(1)(a), a felony of the second degree; and one count of trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(1), (C)(9)(a), a felony of the fifth degree. Toney entered pleas of not guilty to all counts.

{¶5} On August 29, 2024, Toney filed a motion to dismiss for pre-indictment delay. Toney claims that the delay was not justified as the police had the victim's phone since 2018 and did not make an effort to analyze the contents until 2024. Toney also claimed that his memory had faded as to his whereabouts and witnesses were unavailable or had died. Based upon the information in the record, the trial court denied the motion.

{¶6} A jury trial was held on September 11 and 12, 2024. At the conclusion of the trial, the jury found Toney guilty on all three counts. A sentencing hearing was held on October 29, 2024. At the hearing, the State made an oral motion to merge the three counts for sentencing and opted to proceed on the involuntary manslaughter count. The trial court then sentenced Toney to an indefinite prison term of eight to twelve years. Toney appeals from this judgment and raises the following assignments of error on appeal.

**First Assignment of Error**

**Because the trial court erred in finding that [Toney] did not allege or articulate how the delay in indicting Appellant had caused any actual prejudice to [Toney's] defense, the trial court erred in denying and overruling [Toney's] Motion to Dismiss for [Pre-indictment] Delay in violation of [Toney's] right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.**

**Second Assignment of Error**

**The failure of [Toney's counsel] to submit evidence, including, but not limited to, an Affidavit from [Toney], with [Toney's] Motion to Dismiss for [Pre-indictment] Delay, fell below an objective standard of reasonable representation and prejudiced [Toney], and thus constituted ineffective assistance of counsel, in violation of [Toney's] right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

**Third Assignment of Error**

**Because the jury lost its way and created a manifest miscarriage of justice in convicting [Toney], [Toney's] convictions, with respect to all counts, were against the manifest weight of the evidence.**

*Pre-Indictment Delay*

{¶7} In the first assignment of error, Toney claims the trial court erred in denying his motion to dismiss due to pre-indictment delay. An appellate court will review a motion to dismiss for pre-indictment delay de novo as to the legal issues, but the findings of fact are given great deference. *State v. Hines*, 2019-Ohio-5039, ¶ 16 (3d Dist.). The Sixth Amendment of the United States Constitution guarantees

a speedy trial to a person who has been accused of a crime. *State v. Jones*, 2016-Ohio-5105.

> But on its face, the Sixth Amendment provides no protection to those who have not yet been accused; it does not 'require the Government to discover, investigate, and accuse any person within any particular period of time.' United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). . . . But when unjustifiable [pre-indictment] delay causes actual prejudice to a defendant's right to a fair trial despite the state's initiation of prosecution within the statutorily defined limitations period, the Due Process Clause affords the defendant additional protection.

*Id*. at ¶ 11. Pre-indictment delay violates the due process clause when it is unjustifiable and causes actual prejudice. *Id*. at ¶ 12.

{¶8} Courts use a two-part test to determine whether the delay is a violation of the due process clause. *Hines* at ¶ 11. First the defendant must show that the delay has caused actual prejudice to the defense. *Id*. at ¶ 12. "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense. *Jones* at ¶ 28. The defendant's claims of prejudice must be specific, particularized, and non-speculative. *Hines* at ¶ 12. Alleging the mere possibility that memories have faded, witnesses have become inaccessible, or evidence has been lost does not reach the level of actual prejudice. *State v. Adams*, 2015-Ohio-3954, ¶ 103. "In examining the alleged actual prejudice, courts consider 'the particular evidence that was lost or unavailable as a result of the delay and, in particular, consider[] the relevance of the lost evidence and its purported effect on

the defense.'" *Hines* at ¶ 13 quoting *Jones* at ¶ 23. The court considers the evidence as it was at the time the indictment is filed and the prejudice resulting from the delay. *Hines* at ¶ 14. "The burden upon a defendant seeking to prove that [pre-indictment] delay violated due process is 'nearly insurmountable'". *Adams* at ¶ 100 quoting *United States v. Montgomery*, 491 Appx. 683, 691 (6th Cir. 2012).

{¶9} Second, if, and only if, a defendant meets the initial burden of establishing actual prejudice, the burden then shifts to the State to produce evidence of a justifiable reason for the delay. *State v. Whiting*, 84 Ohio St.3d 215, 217 (1998) and *Hines* at ¶ 15.

> [D]elay in the commencement of prosecution can be found to be unjustifiable when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant, . . . or when the state, through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased. The length of delay will normally be the key factor in determining whether a delay caused by negligence or error in judgment is justifiable.

*State v. Luck*, 15 Ohio St.3d 150, 158 (1984).

{¶10} In this case, there was a delay of over five years from the time the police took custody of the victim's phone and the time the forensic examination was conducted. Approximately three months after the examination, the grand jury indicted Toney. No hearing was held on the motion to dismiss with the trial court instead making its decision based solely upon the motion of Toney and the State's

response to the motion. A review of the motion shows that the following facts were alleged.

> [D]ue to the delay, witnesses are unavailable or have died and the defendant cannot recall his whereabouts on said date as his memory has faded.

> The unnecessary passage of time prevents defendant from locating and presenting favorable witnesses and has prevented him from preserving necessary evidence.

Motion to Dismiss. No other information is provided by Toney in support of his motion. His facts alleged are not specific, particularized, and are speculative. No details as to what witnesses would have been called or as to why they are not available was provided. Instead, Toney just relied upon a general statement that his memory has faded and witnesses would not be available. This does not rise to the level of actual prejudice. *Adams* at ¶ 103. Since Toney did not meet his burden of showing actual prejudice, the State was not required to provide an explanation for the delay. *Jones* at ¶ 16. The first assignment of error is overruled.

*Effective Assistance of Counsel*

{¶11} Toney alleges in his second assignment of error that he was denied the effective assistance of counsel when his counsel failed to submit any evidence to the court in support of his motion to dismiss for pre-indictment delay.

> In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, . . . had a fair trial and substantial justice was done." . . . When making that determination, a two-step process is usually employed. "First, there must be a determination as to

whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." . . .

On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent.

*State v. Calhoun*, 1999-Ohio-102 at page 289 (internal citations omitted). "The failure to prove either 1) a substantial violation or 2) prejudice caused by the violation makes it unnecessary for a court to consider the other prong of the test." *State v. Walker*, 2016-Ohio-3499, ¶ 20 (3d Dist.). "To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway*, 2006-Ohio-2815, ¶ 95. "The prejudice inquiry, thus, focuses not only on outcome determination, but also on 'whether the result of the proceeding was fundamentally unfair or unreliable.'" *State v. Montgomery*, 2016-Ohio-5487, quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

{¶12} Toney claims that his counsel was ineffective for failing to have him complete an affidavit to support his motion to dismiss. There is no doubt that presenting evidence along with the motion would have been useful as the motion requires a showing of prejudice. However, even if this court were to find counsel's failure to obtain an affidavit to be an error, there is no evidence that the trial court would have ruled differently if an affidavit were provided in this case. Toney's brief

speculates as to what may have been in the affidavit and then argues that the trial court would have granted the motion had said affidavit been filed. The record does not support this argument. The arguments raised by Toney are completely speculative. As discussed above, the motion to dismiss for pre-indictment delay cannot be based upon mere speculation. Thus, the record does not show that the outcome would be any different. Without a showing of prejudice, this Court cannot find that counsel was ineffective. The second assignment of error is overruled.

*Manifest Weight of the Evidence*

{¶13} Finally, Toney claims that his conviction was against the manifest weight of the evidence.

> When reviewing a judgment to determine if it is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." . . . A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. . . . Although the appellate court acts as a "thirteenth juror," due deference to the findings made by the fact-finder must still be given.

*State v. Hulbert*, 2021-Ohio-2298, ¶ 23 (3d Dist.) (internal citations removed).

{¶14} Here, Toney was convicted and sentenced on one count of involuntary manslaughter.[1] To obtain a conviction on this charge, the state had to prove beyond

---

[1] Toney was also convicted of one count of corrupting another with drugs and trafficking in a fentanyl-related substance. However the convictions were merged and he was not sentenced on these offenses.

a reasonable doubt that Toney caused the death of the victim as a proximate result of committing or attempting to commit a felony. R.C. 2903.04(A). Testimony was presented that indicated the victim was texting with someone identified in her phone as "Mike Toney". During the conversations, the victim addressed the person responding as "Mike". The phone number belonged to Toney's cousin and Toney admitted that the phone was given to him to use by his cousin. Toney also admitted that he went by the name "Mike".

{¶15} The night the victim died, she went to dinner with her mother. Before the victim left, she contacted Toney's phone and asked him to bring her ½ a gram. Detective Kyle Reinbolt testified that based upon the price and the description used in the text messages, he knew the drug in question was likely fentanyl. The victim and the person she was texting discussed when the drugs could be delivered. "Mike Toney" asked the victim if she still wanted half and she said yes. "Mike Toney" indicated he was in Toledo and would text the victim when he was on his way. The victim asked if he would be there by 5 when she would be leaving for dinner. When it was determined that the drugs could not be delivered before the victim left, they agreed Toney would deliver the drugs after dinner. At 7:23 pm, the victim texted Toney that she was home and asked him if he could come then. Toney texted that he was there around midnight.

{¶16} Officer Brian Miller (Miller) testified that the victim's roommate indicated that she last saw the victim alive between 1:00 and 1:30 am on September

10, 2018. The roommate then called the EMS in the morning when she found the victim unresponsive. Miller found a plate with what appeared to be drugs on it and a short straw by it. The victim's body was sent to Lucas County for an autopsy. Dr. Thomas Blomquist ("Blomquist"), the Lucas County Coroner, testified that the victim had 17 nanograms of fentanyl per milliliter in her system and that 5-10 nanograms is a toxic rate. The victim had a metabolite of fentanyl of 3 nanograms per milliliter meaning that the victim likely died about an hour after taking the fentanyl. According to Blomquist, without the fentanyl in her system the victim would not have died.

{¶17} Based upon the text messages and the testimony of the various witnesses, a reasonable juror could conclude that Toney was the "Mike Toney" in the text messages. The messages indicated that the victim was buying drugs, likely fentanyl based upon the amount and the price, from the person she was texting. The messages also indicate that around midnight of the night the victim died, "Mike Toney" delivered the drugs to the victim's house. The victim was last seen alive between 1:00 and 1:30 am that night. She was found dead the next morning. The coroner testified that the fentanyl was a cause of her death and that she died within about one hour of taking it. Given all of this evidence, we do not find that the jury clearly lost its way in finding Toney guilty of causing the death of another as a result of committing a felony – the selling of the drugs. There was no clear miscarriage of justice. As this court has found the conviction for the involuntary manslaughter

charge was not against the manifest weight of the evidence and it was the charge upon which Toney was sentenced, we need not address the remaining counts which were merged into this conviction. *State v. Turvey*, 2023-Ohio-2248, ¶ 98 (6th Dist.). Thus, the third assignment of error is overruled.

{¶18} Having found no errors prejudicial to the appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Seneca County is affirmed.

*Judgment Affirmed*

**WALDICK, P.J. and ZIMMERMAN, J., concur.**

Case No. 13-24-43

# JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
John R. Willamowski, Judge


_____
Juergen A. Waldick, Judge


_____
William R. Zimmerman, Judge

DATED:
/hls

-13-