[Cite as *State v. Walker*, 2018-Ohio-3669.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106414**

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## DEON A. WALKER

DEFENDANT-APPELLEE

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-615695-A

**BEFORE:** E.T. Gallagher, P.J., Stewart, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 13, 2018

[Cite as *State v. Walker*, 2018-Ohio-3669.]
**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Oscar Albores
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Mark Stanton
Cuyahoga County Public Defender

BY:    Erika B. Cunliffe
Assistant Public Defender
Courthouse Square, Suite 200
310 Lakeside Avenue
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, P.J.:

{¶1} Plaintiff-appellant, the state of Ohio, appeals the dismissal of rape charges filed against defendant-appellee, Deon A. Walker, and claims one assignment of error:

> 1. The trial court erred by granting appellee's motion to dismiss due to preindictment delay.

{¶2} We find merit to the appeal and reverse the trial court's judgment.

## I. Facts and Procedural History

{¶3} On April 17, 2017, Walker was indicted on one count of rape in violation of R.C. 2907.02(A)(2) and one count of kidnapping in violation of R.C. 2905.01(A)(4) for offenses he allegedly committed on October 4, 1997. Walker moved to dismiss the indictment, arguing he was prejudiced by the almost 20-year delay between the alleged incident giving rise to the charges and the filing of the indictment.

{¶4} The victim, S.T., testified at a hearing on the motion to dismiss that she met Walker at the "Le Mirage" bar on Kinsman Road in Cleveland on October 4, 1997. After S.T. had consumed five or six drinks, Walker offered to drive her home to her apartment in Warrensville Heights. However, they stopped at Walker's house on East 113th Street in Cleveland after dropping off two friends, and Walker informed S.T. that he was too drunk to drive to Warrensville Heights, especially since one of the brake lights on his car was not working. S.T. indicated she would walk home but asked to use the bathroom first.

{¶5} S.T. alleges that before she could leave the house, Walker grabbed her and said "Baby, I don't want you walking home by yourself. Why don't you stay here tonight?" When S.T. attempted to leave, Walker grabbed her, cupped his hand over her mouth, and told her: "You better be quiet or I'll take you out and beat your ass, bitch. My grandparents are sleeping upstairs."

{¶6} Walker dragged S.T. into the living room, pushed her onto the couch, and demanded that she remove her clothes. S.T. later told police that when she screamed in an attempt to wake Walker's grandparents, Walker punched her in the face and threatened to drag her outside and cut her throat if she made any more noise. According to S.T., Walker vaginally raped her on the living room couch.

{¶7} After the rape, Walker fell asleep, and S.T. quietly left the house and found a ride home. S.T.'s roommate, C.H., convinced S.T. to call the police. Police officers transported S.T. back to Walker's house where they found Walker and S.T.'s bra, which had been torn during the struggle, were still on the living room couch. Walker admitted having sex with S.T., but claimed it was consensual. Police questioned Walker's grandfather, Arthur Walker ("Arthur"), and his great uncle, Washington Walker ("Washington"), who were in the home at the time of the alleged rape. Both men reported that they were asleep and never knew there was a female in the house during the night. The police arrested Walker within hours of the alleged rape.

{¶8} S.T. went to St. Luke's Hospital where a rape kit was collected. Detectives later told S.T. that she would have to come to the police station to make an additional

statement. S.T. refused to make another statement, and the case was closed. Walker was subsequently released without any charges being filed.

{¶9} In March 2014, the Ohio Bureau of Criminal Investigation ("BCI") notified the Cleveland Police Department that DNA found in S.T.'s rape kit matched Walker's DNA profile. The rape case was reopened, detectives located S.T., who was now willing to assist the prosecution, and Walker was indicted.

{¶10} At the hearing on Walker's motion to dismiss, Walker testified that the sex he had with S.T. was consensual. He also asserted that although Washington's bedroom was six or seven feet away from the couch where the alleged rape occurred, Washington told the police that he did not hear anything and had no idea that S.T. was in the house. According to Walker, Arthur's bedroom was located above the living room where the alleged rape occurred, and Arthur also told police that he never heard a female voice during the night of the alleged rape.

{¶11} Walker further testified that, at the time of the hearing, Arthur was deceased, and Washington was in his nineties. When asked whether Washington was senile, Walker explained:

> I haven't talked to him, seen him in years, but I know they stopped him from driving because he had a bad car accident. He's an older gentleman now. And I'm not sure exactly, you know, where he is, you know with his capacity.

(Tr. 19-20.) On cross-examination, Walker indicated that if the case were to go trial, Washington would probably come to court to testify, but Walker did not know the state of

Washington's mind because he had not seen him or spoken to him in three to four years. (Tr. 26.) Walker admitted that he had no knowledge as to whether Washington would remember what happened in 1997. (Tr. 26.)

**{¶12}** Walker also discussed his interaction with the lead detective, Detective Patrick McHugh, who investigated the case in 1997. Walker claimed he was released without charges because McHugh was convinced that Walker did not rape S.T. (Tr. 20-21.) However, Walker's trial counsel admitted he did not know if the detective was deceased or retired and living elsewhere because he did not have the resources to find him. (Tr. 28.) The prosecutor advised the court that the state had made no effort to locate either McHugh or C.H., S.T.'s former roommate, before the hearing. Therefore, it was not known at the time of the hearing if these witnesses were dead or could be found to testify at trial.

**{¶13}** Based on the evidence adduced at the hearing and the parties' briefs, the trial court dismissed the charges against Walker with prejudice. The state now appeals the trial court's judgment.

## II. Law and Analysis

**{¶14}** In its sole assignment of error, the state argues the trial court erred in dismissing its indictment against Walker. The state contends that Walker failed to demonstrate the loss of any evidence that actually prejudiced his defense as a result of preindictment delay.

**{¶15}** In reviewing a trial court's decision on a motion to dismiss for preindictment delay, this court applies a de novo standard of review to the legal issues, but we afford great deference to the findings of fact made by the trial judge. *State v. Hunter*, 8th Dist. Cuyahoga No. 104789, 2017-Ohio-4180, ¶ 16.

**{¶16}** The statute of limitations for a criminal offense is the defendant's primary protection against overly stale criminal charges. *U.S. v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, the Due Process Clause of the Fifth Amendment provides additional protection in cases where the preindictment delay was unjustifiable and caused actual prejudice. *U.S. v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12.

**{¶17}** The Ohio Supreme Court has established a burden-shifting framework for analyzing a due-process claim based on preindictment delay. *Jones* at ¶ 13. Under this framework, the defendant bears the initial burden of presenting evidence of actual prejudice. *Id*. "Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay." *Jones* at ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99. Therefore, if the defendant fails to establish actual prejudice, the court is not required to consider the reasons for the delay. *Adams* at ¶ 107.

{¶18} "A court must 'consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.'" *Id.*, quoting *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52. A claim of actual prejudice should be scrutinized "vis-à-vis the particular evidence that was lost or unavailable as a result of the delay" and "the relevance of the lost evidence and its purported effect on the defense." *Id*. at ¶ 23.

{¶19} The trial court found that Arthur, C.H., and Detective McHugh were unavailable for trial and that the unavailability of these witnesses prejudiced Walker's ability to present a defense.[1] Yet Walker's counsel conceded at the hearing that he had no knowledge as to whether McHugh or C.H. were actually unavailable. Counsel advised the court that he considered them unavailable because he could not locate them. However, there is no evidence or explanation in the record as to what steps counsel took to find them. The record is silent as to whether counsel conducted an internet search, engaged the services of an investigator, contacted McHugh's former employer, the Cleveland Police Department, or made any other attempts to find these witnesses.

{¶20} As previously stated, the defendant bears the initial burden of establishing actual prejudice. *Jones* at ¶ 13. In order to establish actual prejudice caused by the

---

[1] Although Walker claimed he was prejudiced by the unavailability of six witnesses, the court found that Walker was only prejudiced by the unavailability of Detective McHugh, C.H., and Arthur. The court concluded that any prejudice resulting from the unavailability of the other witnesses was speculative and did not amount to actual prejudice.

unavailability of witnesses, the defendant must first prove that the witnesses are in fact unavailable. A defendant's bald assertion that witnesses are unavailable because they cannot be found is not sufficient to establish the unavailability of the witnesses. There must be some explanation of the efforts the defendant made to find them. And the trial court must make a determination as to whether the attempts made to find missing witnesses were sufficient to justify the conclusion of unavailability. Moreover, the record should include evidence of the attempts made to locate missing witnesses so that the appellate court can accurately assess the trial court's judgment.

{¶21} We are not prescribing any bright line rule for determining the unavailability of witnesses. The assessment of actual prejudice involves a "case-by-case consideration" of the particular circumstances. *Jones* at ¶ 20. However, because the burden of establishing actual prejudice rests on the defendant, the defendant must provide evidence to support a finding of the unavailability of any particular witness. Walker failed to meet this burden with respect to the alleged unavailability of C.H. and Detective McHugh.

{¶22} The trial court also found that Walker was prejudiced by the unavailability of Arthur, his deceased grandfather. Evidence that a witness is deceased is obviously sufficient to establish the witness's unavailability. However, the death of a witness, by itself, is not enough to establish actual prejudice. *Jones* at ¶ 26.

> [A] defendant cannot rely upon broad assertions of missing evidence or an unavailable witness to establish prejudice. A defendant must demonstrate a viable, tangible connection between the missing evidence or the unavailable witness to the defense of the case.

*State v. Richardson*, 2016-Ohio-5843, 70 N.E.3d 1175, ¶ 13 (8th Dist.).

**{¶23}** In *Jones*, the Ohio Supreme Court explained that the due process requirement of actual prejudice may be shown upon "the proven unavailability of specific evidence or testimony that would attack the credibility or weight of the state's evidence against a defendant, and thereby aid in establishing a defense." *Jones* at ¶ 25. Although the defendant is not required to establish precisely what an unavailable witness would have testified to at trial, "there must be some indication in the record of what the missing evidence or unavailable witness might have offered." *Richardson* at ¶ 13. "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Jones* at ¶ 28, citing *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984).

**{¶24}** As previously stated, Arthur reported to police that although he was in the home at the time of the alleged rape, he was asleep and never heard the victim's voice. Walker maintains his grandfather never heard the victim scream because the sex was consensual. S.T. testified that she screamed during the rape, and Walker punched her in the face and threatened to cut her throat if she made any more noise. In any case, Arthur was asleep when the alleged rape occurred. Just because he did not hear the victim scream does not mean the victim never screamed or that the rape never occurred. It simply means that Arthur did not hear anything. Arthur could not have minimized or eliminated the impact of the state's evidence and bolstered the defense because he had

absolutely no relevant knowledge of the incident. Therefore, it cannot be said that Arthur's unavailability for trial prejudiced Walker's defense.

{¶25} It is the defendant's burden to establish actual prejudice in cases of preindictment delay. Walker failed to meet his burden in this case. Accordingly, the sole assignment of error is sustained.

{¶26} The trial court's judgment is reversed and the case remanded for further proceedings.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, PRESIDING JUDGE

MELODY J. STEWART, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY