**[Cite as *State v. Craig*, 2023-Ohio-1003.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 22AP-215 |
| v. | : | (C.P.C. No. 21CR-2468) |
| Jonathan A. Craig, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 28, 2023

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Darren M. Burgess*, for appellant. **Argued:** *Darren M. Burgess*.

**On brief:** *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for appellee. **Argued:** *George M. Schumann*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals a judgment of the Franklin County Court of Common Pleas that granted the dismissal of rape charges filed against defendant-appellee, Jonathan A. Craig, due to preindictment delay. For the following reasons, we reverse that judgment and remand this matter to the trial court for further proceedings.

**I. Facts and Procedural History**

{¶ 2} On June 17, 2021, Craig was indicted on three counts of rape, all felonies of the first degree, in violation of R.C. 2907.02. All three counts in the indictment alleged that, on or about November 19, 1998, Craig engaged in sexual contact with D.A. by purposefully compelling her to submit by force or threat of force.

{¶ 3}   Craig moved to dismiss the indictment based on the over 22-year delay between the date of the alleged offense and the filing of the indictment.  According to Craig, the preindictment delay violated his due process rights under the United States and Ohio Constitutions.  Craig argued the delay caused him actual prejudice that prevented him from presenting a complete defense at trial, and the state could not produce a justifiable reason for the delay.  The state opposed Craig's motion, asserting neither actual prejudice nor unjustifiable delay existed.

{¶ 4}   The trial court held an evidentiary hearing regarding the motion to dismiss. The evidentiary record established that Craig lacked any specific memory of D.A. or sexual contact with her.  At the hearing, Craig testified he could not remember exactly what he did on November 19, 1998.  Additionally, he admitted that, upon seeing a photograph of D.A., he did not recognize her.

{¶ 5}   However, Craig explained that during fall 1998, he was using and occasionally selling crack cocaine at an apartment on the west side of Columbus.  The apartment was located only three blocks from an establishment known as the "Candy Store."  (Tr. at 10.) Women who worked at the Candy Store visited the apartment to buy crack cocaine or trade sex for crack cocaine.  Approximately three separate times, Craig traded crack cocaine for sex with women who worked at the Candy Store.  All these sexual encounters were consensual.  Later during the hearing, Craig's attorney established that D.A. worked at the Candy Store.

{¶ 6}   According to Craig, three different witnesses would have corroborated his testimony if they had not died prior to the issuance of the indictment.  First, two paraplegic, house-bound brothers, Oscar Knox and Charles Colvin,[1] lived at the apartment and knew women from the Candy Store who frequented the apartment.  Craig testified the brothers also were aware that women from the Candy Store exchanged sex for crack cocaine at the apartment.  Additionally, Craig testified regarding his friend Larry Madden, who smoked and sold crack cocaine with Craig at the apartment.  Madden knew that women who worked at the Candy Store bought crack cocaine and traded sex for crack cocaine at the apartment. Knox died in 2014, Colvin in 2003,and Madden in 2015.

---

[1] Craig originally misidentified Colvin as "Charley Knox," but an investigator for the Franklin County Public Defender's Office corrected Craig's error.  (Tr. at 21.)

{¶ 7} The state presented the testimony of Captain Charles Williamson and Sergeant Brian Toth, both officers with the Franklin County Sheriff's Office ("Sheriff's Office"). In February 2021, Captain Williamson found an untested sexual assault kit in the Sheriff's Office property room that was older than 30 days. Upon inquiring about the kit, Captain Williamson learned that the property room possessed several older untested sexual assault kits. Captain Williamson then asked the property room supervisor to create an inventory of all untested sexual assault kits older than 30 days. D.A.'s sexual assault kit appeared on that list.[2]

{¶ 8} Captain Williamson directed Sergeant Toth to send D.A.'s sexual assault kit to Ohio's Bureau of Criminal Investigation for DNA testing. Testing on the kit resulted in the identification of Craig. DNA testing of D.A.'s sexual assault kit did not occur before 2021 either due to a "mistake by the property room" or because "the detective [originally assigned to the case] did not request for them to send [the kit] out." (Tr. at 51, 52.)

{¶ 9} As part of investigating D.A.'s case, Sergeant Toth reviewed the original investigatory case file. According to that file, the detective who investigated the case in 1998, Detective Larry Winters, attempted to contact D.A. 12 times after she reported the rape. Detective Winters' attempts were unsuccessful. Consequently, in January 1999, Detective Winters closed the investigation. The investigation then remained dormant until Sergeant Toth took it over in 2021.

{¶ 10} Sergeant Toth acknowledged that the original investigatory file indicates that police recovered a lighter and paper currency from the alleged crime scene. The Sheriff's Office, however, destroyed both items prior to the filing of the indictment. Furthermore, photographs taken as part of the original investigation are also missing.

{¶ 11} At the hearing, Craig's attorney argued that the death of Knox, Colvin, and Madden caused Craig actual prejudice because the three witnesses would have supported Craig's defense that he and D.A. engaged in consensual sex. According to Craig's attorney, Craig intended to testify that, although he did not remember D.A., he believed he left his

---

[2] Captain Williamson did not explain why the Sheriff's Office failed to comply with 2014 Sub.S.B. No. 316, which became effective on March 23, 2015 and amended R.C. 2933.82. As amended, R.C. 2933.82(B)(2)(a) required the Sheriff's Office to forward all sexual assault kits in its possession that were collected during a rape investigation to a crime laboratory for DNA testing by March 23, 2016. D.A.'s sexual assault kit languished in the Sheriff's Office property room for almost five years after the running of the statutory deadline.

DNA on her when he had consensual sex with her in exchange for crack cocaine at the apartment. The three deceased witnesses would have verified that female workers from the Candy Store traded sex for crack cocaine at the apartment.

{¶ 12} In a judgment entry dated March 9, 2022, the trial court granted Craig's motion to dismiss. The trial court found Craig established actual prejudice and the state failed to prove a justifiable reason for the delay in prosecution.

## II. Assignment of Error

{¶ 13} The state now appeals the March 9, 2022 judgment and assigns the following sole assignment of error for our review:

> The trial court erred when it dismissed the Franklin County Grand Jury's indictment charging the defendant with three counts of first degree rape.

## III. Analysis

{¶ 14} Before addressing the merits of this appeal, we must clarify which facts we will consider on appeal. First, the state wants us to consider facts which the state included in its appellate brief but failed to establish with evidence in the trial court. We refuse to do so. A reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings, and then decide an appeal based on the new matter. *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus; *accord State v. McComas*, 10th Dist. No. 05AP-134, 2006-Ohio-380, ¶ 15 ("[A]n appellate court cannot consider evidence outside of the record created before the trial court."). Second, both parties would have us consider facts they recited in their trial court briefing but did not support with evidence at the evidentiary hearing. In other words, the parties want us to accept their attorneys' statements of fact as evidence. However, statements made by legal counsel are not evidence. *In re A.E.*, 10th Dist. No. 19AP-782, 2021-Ohio-488, ¶ 79; *State v. Walters*, 10th Dist. No. 06AP-693, 2007-Ohio-5554, ¶ 81. Consequently, where no evidence underlies the facts stated, we disregard them.

{¶ 15} By its assignment of error, the state argues the trial court erred in dismissing the indictment based on preindictment delay. The state contends Craig failed to demonstrate that the loss of evidence during the preindictment delay actually prejudiced Craig's defense. We agree.

{¶ 16}  In reviewing a dismissal for preindictment delay, a court of appeals applies the de novo standard of review to issues of law, but affords great deference to a trial court's findings of fact.  *State v. Porter*, 3d Dist. No. 1-21-01, 2021-Ohio-2539, ¶ 7; *State v. McKinley*, 8th Dist. No. 108715, 2020-Ohio-3664, ¶ 31-32; *State v. Adkins*, 6th Dist. No. WD-16-042, 2018-Ohio-2588, ¶ 11; *State v. Hawkins*, 2d Dist. No. 27019, 2018-Ohio-867, ¶ 37; *State v. Wilson*, 10th Dist. No. 13AP-205, 2013-Ohio-4799, ¶ 4.  A court of appeals will accept a trial court's findings of fact if they are supported by competent, credible evidence. *McKinley* at ¶ 32.

{¶ 17} Statutes of limitations determine "the ultimate time limit within which the government must prosecute a defendant."  *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, ¶ 11.  "These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *United States v. Marion*, 404 U.S. 307, 322 (1971).  However, even if the state indicts a defendant within a statute of limitations, the protections afforded by the Due Process Clauses of the United States and Ohio Constitutions may require the dismissal of the indictment.  *Id.* at 324; *State v. Luck*, 15 Ohio St.3d 150, 159 (1984).  When unjustifiable preindictment delay actually prejudices a defendant's right to a fair trial despite the state's initiation of prosecution within the statutorily defined limitations period, the state violates the defendant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.  *Jones* at ¶ 11-12; *Luck* at paragraph two of the syllabus.

{¶ 18} Courts employ a burden-shifting framework to analyze a due-process claim based on preindictment delay. *Jones* at ¶ 13. A defendant first bears the burden of presenting evidence that the preindictment delay caused actual prejudice.  *Id.*; *State v. White*, 10th Dist. No. 15AP-815, 2017-Ohio-810, ¶ 54, 68.  The burden then shifts to the state to produce evidence of a justifiable reason for the delay.  *Jones* at ¶ 13; *White* at ¶ 54.

{¶ 19} "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense."  *Jones* at ¶ 28.  A determination of actual prejudice requires " ' "a delicate judgment" ' " based on "a case-by-case consideration of the particular circumstances."  *Id.* at ¶ 20, quoting *State v. Walls*, 96 Ohio St.3d 437,

2002-Ohio-5059, ¶ 52, quoting *Marion* at 325. That consideration must include "the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." *Walls* at ¶ 52.

{¶ 20} The defendant bears the burden of demonstrating the exculpatory value of the evidence he lost due to the preindictment delay.[3] *State v. Miller*, 10th Dist. No. 11AP-899, 2013-Ohio-1242, ¶ 42; *State v. Dennis*, 10th Dist. No. 05AP-1290, 2006-Ohio-5777, ¶ 19. The defendant must show how the unavailable witnesses and lost physical evidence would have aided in establishing the defendant's asserted defense. *State v. Meeks*, 5th Dist. No. 21 CAA 20 0010, 2022-Ohio-6, ¶ 53. " 'Without proof of prejudice, meaning something which adversely affects [a defendant's] ability to defend himself at trial, there is no due process violation for preindictment delay in prosecution.' " *Id.*, quoting *State v. Smith*, 8th Dist. No. 100501, 2014-Ohio-3034, ¶ 26.

{¶ 21} Speculative prejudice does not satisfy the defendant's burden. *Jones* at ¶ 20. The mere possibility that memories will fade, witnesses will become unavailable, or evidence will be lost is not sufficient to establish actual prejudice. *Id.* at ¶ 21. " 'Proof of actual prejudice must be specific, particularized, and non-speculative; a court will not speculate as to whether the delay somehow prejudiced a defendant.' " *Miller* at ¶ 42, quoting *Dennis* at ¶ 19.

{¶ 22} In the case at bar, the trial court found Craig demonstrated actual prejudice because "evidence has been destroyed and witnesses are no longer alive." (Mar. 9, 2022 Entry at 3.) We will first address the destroyed evidence. At the hearing, Sergeant Toth's testimony established that the Sheriff's Office had destroyed a lighter and a dollar bill collected from the alleged crime scene.[4] Additionally, photographs relevant to the case are missing from the investigatory file. Craig, however, did not show how the loss of this evidence minimized or eliminated the impact of the state's evidence and bolstered the

---

[3] The missing evidence need not have "demonstrably exculpatory value that goes beyond attacking the credibility of the state's evidence" to be actually prejudicial. *Jones* at ¶ 23. "[T]he proven unavailability of specific evidence or testimony that would attack the credibility or weight of the state's evidence against a defendant and thereby aid in establishing a defense may satisfy the due-process requirement of actual prejudice." *Id.* at ¶ 25.

[4] The trial court decision and the parties' briefs state that the Sheriff's Office also destroyed cigarettes collected from the alleged crime scene. No evidence in the record substantiates these statements.

defense. Consequently, Craig has not proven that the loss of the physical evidence has actually prejudiced him.

{¶ 23} At trial and on appeal, Craig primarily argued that dismissal was warranted because the death of the three witnesses—Colvin, Knox, and Madden—actually prejudiced him. The death of a witness during the preindictment period may constitute actual prejudice, but only if the defendant can identify the exculpatory evidence that was lost and show that the exculpatory evidence could not be obtained by any other means. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 103. In identifying the exculpatory evidence lost, "a defendant need not know what the exact substance of an unavailable witness's testimony would have been in order to establish actual prejudice based on the witness's unavailability." *Jones* at ¶ 28. However, while precision is not required, a defendant must explain what testimony the unavailable witness might have offered. *State v. Walker*, 8th Dist. No. 106414, 2018-Ohio-3669, ¶ 23; *State v. Hart*, 8th Dist. No. 105673, 2018-Ohio-3272, ¶ 19.

{¶ 24} Here, Craig does not generically claim that the deceased witnesses' testimony would have assisted his defense. Rather, Craig explained that the deceased witnesses would have testified that women who worked at the Candy Store traded sex for crack cocaine at the apartment. Craig, therefore, has identified with sufficient specificity the testimony the deceased witnesses would have offered.

{¶ 25} The state suggests we cannot give any credence to Craig's recounting of what the deceased witnesses would have said on the stand. But we defer to the trial court on issues of fact. *Porter* at ¶ 7; *McKinley* at ¶ 32; *Adkins* at ¶ 11; *Hawkins* at ¶ 37; *Wilson* at ¶ 4. As the trier of fact, the trial court is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Hawkins* at ¶ 38, 47. We thus accept the trial court's findings of fact if they are supported by competent, credible evidence. *McKinley* at ¶ 32.

{¶ 26} Here, the trial court had to find Craig credible to determine that the loss of the deceased witnesses' testimony actually prejudiced him. The testimony of Sky Sharma, the investigator for the Franklin County Public Defender's Officer, confirmed the basic facts Craig set forth. Sharma testified that Knox, Colvin, and Madden all existed, but all three had died. Sharma determined that Knox and Colvin had lived at the apartment together, as Craig stated. Sharma also found that Madden had reported his address as the same

apartment during the period that Knox and Colvin lived at the apartment. Finally, Sharma verified through Craig's siblings that Craig was taking drugs in 1998 and that Knox and Colvin were physically disabled. Given this competent, credible evidence, we conclude that the trial court had a basis on which to find Craig credible, and we decline to second-guess that credibility finding.

{¶ 27} We, therefore, are left with the ultimate question: whether the loss of the deceased witnesses' testimony actually prejudiced Craig, i.e., whether the lost testimony would have minimized or eliminated the impact of the state's evidence and bolstered Craig's defense. We find it would not.

{¶ 28} Craig bases his defense on consent. In his version of events, he gave D.A. crack cocaine and, in return, she engaged in consensual sex with him at the apartment. Craig contends that the deceased witnesses would provide evidence minimizing the state's claim of forcible sexual contact and bolstering his defense of consent. Craig, however, did not state that the deceased witnesses would testify that he and D.A. had engaged in consensual sex at the apartment. Craig did not even claim that the deceased witnesses would testify that D.A. had traded sex for crack cocaine at the apartment. Instead, the deceased witnesses would only testify that women who worked at the Candy Store traded sex for crack cocaine at the apartment. For this testimony to minimize the state's evidence and assist Craig in bolstering his defense, a finder of fact would have to first infer from the testimony that D.A. was one of the female employees of the Candy Store who visited the apartment to obtain crack cocaine. Building on that first inference, the finder of fact would then have to infer that D.A. also agreed to trade sex for crack cocaine at the apartment. And finally, the finder of fact would have to further infer that D.A. had consensual sex with Craig in exchange for crack cocaine at the apartment on or about November 19, 1998.

{¶ 29} "A trier of fact may not draw 'an inference based * * * entirely upon another inference, unsupported by any additional fact or another inference from other facts.' " *State v. Cowans*, 87 Ohio St.3d 68, 78 (1999), quoting *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329 (1955), paragraph one of the syllabus; *accord State v. Agee*, 10th Dist. No. 19AP-12, 2021-Ohio-489, ¶ 55, quoting *State v. Ingram*, 10th Dist. No. 11AP-1124, 2012-Ohio-4075, ¶ 23 (Citations omitted.) (" 'The rule prohibiting the stacking of one inference upon another prohibits the drawing of one inference solely and entirely from another

inference, where that inference is unsupported by any additional facts or inferences drawn from other facts.' "). The rule against inference stacking prevents a finder of fact from arriving at an inference that is so attenuated that it amounts to pure speculation or conjecture. *State v. Greeno*, 4th Dist. No. 19CA15, 2021-Ohio-1372, ¶ 34; *State v. Armstrong*, 11th Dist. No. 2015-P-0075, 2016-Ohio-7841, ¶ 23. "While reasonable inferences may be drawn from the facts and conditions established, they cannot be drawn from facts or conditions merely assumed." *Armstrong* at ¶ 23.

{¶ 30} Absent any inference, the deceased witnesses' testimony only establishes that women who worked at that Candy Store traded sex for crack cocaine. Without drawing inferences, the testimony does not establish that D.A. traded sex for crack cocaine, much less that D.A. traded sex with Craig for crack cocaine. Thus, the deceased witnesses' testimony only helps Craig if a finder of fact can use it as a basis to stack inference upon inference to arrive at the conclusion that D.A. had consensual sex with Craig in exchange for crack cocaine at the apartment on or about November 19, 1998. The rule against stacking inferences, however, precludes a finder of fact from drawing that conclusion. Consequently, the deceased witnesses' testimony does not minimize the state's evidence and bolster Craig's defense, so it does not establish actual prejudice.

{¶ 31} Because Craig did not carry his burden to prove actual prejudice, the trial court erred in granting the motion to dismiss for preindictment delay. Accordingly, we sustain the state's sole assignment of error.

## IV. Conclusion

{¶ 32} For the foregoing reasons, we sustain the state's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas, and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed*;
*cause remanded.*

BEATTY BLUNT, P.J., and BOGGS, J., concur.

———————————